GREBNER v RUNYON

Docket No. 66865. Submitted April 19, 1983, at Lansing.—Decided February 21, 1984.

Mark L. Grebner, an Ingham County commissioner, brought a defamation action in Ingham Circuit Court against Robert Runyon and MegaMedia, Inc., alleging that on November 1, 1979, a Lansing area radio station owned by MegaMedia broadcast a report by Runyon that plaintiff had been indicted on charges of not having paid federal, state, and City of Lansing income taxes. Plaintiff alleged that the report was untrue and had been made with actual malice. On January 16, 1981, plaintiff filed his first amended complaint in which he added Robert Black as a defendant, alleging that the false story had originated with Black. Black moved for accelerated judgment on the basis of the running of the statutory period of limitation of one year. MegaMedia moved for summary judgment on the basis that there existed no material issue of fact. The trial court, Hudson E. Deming, J., granted both motions. Plaintiff, having received a jury verdict in his favor against Runyon in the amount of $7,500, appeals from the orders granting the motions of Black and MegaMedia, Inc. *Held:*

1. Since plaintiff is a public figure, he must plead and prove actual malice in order to have an actionable claim for libel.

2. While a principal can be held liable for the slander of its

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 5] 50 Am Jur 2d, Libel and Slander § 301.

Constitutional aspects of libel and slander—Supreme Court cases. 28 L Ed 2d 885.

What constitutes actual malice, within federal constitutional rule requiring public officials and public figures to show actual malice. 20 ALR3d 988.

[3, 4] 50 Am Jur 2d, Libel and Slander § 328.

Joint liability for slander. 26 ALR2d 1031.

[4] 50 Am Jur 2d, Libel and Slander § 343.

Liability of radio broadcasting company for defamatory statement by one not in it's employ during broadcast. 5 ALR2d 957.

[5] 50 Am Jur 2d, Libel and Slander §§ 455, 529.

[6] 50 Am Jur 2d, Libel and Slander § 350.

51 Am Jur 2d, Limitation of Actions §§ 148, 149.

agent, the actual malice of Runyon may not be imputed to MegaMedia, since the pleadings, affidavits, and other evidence clearly establish that Runyon was not an agent of MegaMedia but was rather supplying reports to the radio station on the basis of an independent agreement between Runyon's employer and the radio station. The trial court, however, improperly granted summary judgment in favor of MegaMedia, since the pleadings establish a question of fact as to whether there was actual malice on the part of MegaMedia on the basis of reckless disregard of the truth in its broadcasting of the Runyon report.

3. Plaintiff's reliance on the statute which tolls the general statute of limitations where there is fraudulent concealment is misplaced. Fraudulent concealment in the context of that tolling statute means the employment of an artifice which is intended to prevent inquiry, escape investigation, or mislead or hinder the acquiring of information. Those fraudulent acts must be affirmative in character. Since plaintiff failed to allege any such affirmative acts by Black, the tolling statute does not apply. Accelerated judgment in favor of Black was proper.

Reversed as to defendant MegaMedia, Inc.; affirmed as to defendant Black.

1. LIBEL AND SLANDER — PUBLIC FIGURES — ACTUAL MALICE.

> A public figure must show actual malice in order to prevail in a libel suit; he must prove that the defendant published the allegedly libelous statements with knowledge of their falsity or with reckless disregard for whether or not the statements were true.

2. LIBEL AND SLANDER — ACTUAL MALICE — "RECKLESS DISREGARD".

> The "reckless disregard of whether a statement is false or not" element of actual malice is not measured by whether a reasonably prudent man would have published or would have investigated before publishing but by whether the defendant in fact entertained serious doubts as to the truth of his publication; ill will, spite, hatred, failure to investigate or even attempt to do harm to plaintiff do not amount to actual malice.

3. LIBEL AND SLANDER — AGENT OF CORPORATION.

> A corporation may be held liable for slander uttered by an agent while in the discharge of his duty as agent and in relation to the matter about which his duty as agent permits or requires him to act, in the same way and to the same extent as an individual could be held liable for the same slander.

4. LIBEL AND SLANDER — AGENTS — ACTUAL MALICE.

A reporter is not an agent of a radio station such that the malice of the reporter relative to an allegedly libelous statement may be imputed to the radio station where the reporter is not an employee of the station or otherwise under the direction or control of the station but rather supplies news stories to the station pursuant to an agreement by the reporter's employer, a newspaper, to supply news stories in exchange for the broadcasting by the radio station of advertisements for the reporter's employer.

5. LIBEL AND SLANDER — ACTUAL MALICE — EVIDENCE — INFERENCES — CIRCUMSTANTIAL EVIDENCE.

The actual malice necessary to defeat a conditional privilege in a libel action can be established by inference; indeed, given the very subjective nature of the test for actual malice, circumstantial evidence may be the only type of evidence available on the issue of actual malice.

6. LIMITATION OF ACTIONS — FRAUDULENT CONCEALMENT.

Fraudulent concealment, to effect tolling of the general statute of limitations as to personal actions, requires the employment of an artifice which is intended to prevent inquiry, to escape investigation, or to mislead or hinder acquirement of information disclosing a right of action; and the acts relied on to establish fraudulent concealment must be of an affirmative character and fraudulent (MCL 600.5855; MSA 27A.5855).

*Paul C. Pratt,* for plaintiff.

*Foster, Swift, Collins & Coey, P.C.* (by *William R. Schulz),* for MegaMedia, Incorporated.

*George H. Denfield* and *John W. Cotner,* for Robert L. Black.

Before: V. J. BRENNAN, P.J., and M. J. KELLY and N. J. KAUFMAN,* JJ.

V. J. BRENNAN, P.J. Plaintiff filed a defamation action against defendants Robert Runyon and MegaMedia, Incorporated, on March 6, 1980. On Jan-

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

uary 16, 1981, plaintiff filed his first amended complaint in which he added Robert Black as a defendant.

This action arises out of the following factual situation. On October 31, 1979, defendant Black, an assistant to the Mayor of Lansing, allegedly told Arlo Earegood, a deputy county sheriff, that plaintiff, a county commissioner, had been indicted or charged with criminal tax evasion. Defendant Runyon, an employee of the Ingham County News, purportedly obtained the story either directly or indirectly from Earegood or Sharon Whipple, the county sheriff's personal secretary. Whipple or Earegood referred defendant Runyon to defendant Black for confirmation of the story. On October 31, 1979, defendant Runyon called defendant Black, who allegedly confirmed to Runyon that plaintiff was being investigated on tax charges and would appear in court on those charges on the following day. Plaintiff contends that by this statement defendant Black meant, and was understood to mean, that plaintiff was being charged with criminal tax evasion. In any event, as a result of the above events, on October 31, 1979, defendant Runyon called the following report into MegaMedia's WFMK radio station:

"Two Democratic County Commissioners have been indicted in Ingham County District Court on charges of not having paid their federal, state and Lansing City income tax for the past three years. The Commissioners, Pat Ryan and Mark Grebner, the targets of recent recall movements by organizations charging them with being against law enforcement, had no comment today although Ryan has called for a press conference Friday, at which time he is expected to submit his resignation from the board. Ryan is also under indictment for operating a junkyard in his home in Lansing. Grebner, who lives in East Lansing, works in Lansing, and is

therefore liable for Lansing income tax provisions. This is Bob Runyon, reporting for WFMK."

On November 1, 1979, WFMK's news director, David Downing, broadcast the above report, verbatim, over the public airway. Subsequently, plaintiff requested that WFMK broadcast the following retraction:

"WFMK regrets that it previously reported that County Commissioner Mark Grebner had been indicted for failure to pay income taxes. We have now learned that Mr. Grebner is neither under indictment nor under investigation on any tax charges.

"As to city income taxes, Lansing City Attorney Steve Sawyer confirms that Mr. Grebner, who neither works nor lives in Lansing, owes no city taxes and is not obligated to file a return.

"WFMK regrets its error."

While the record is not entirely clear, it seems that, in lieu thereof, a report qualifying the original story was broadcast:

"It was reported earlier today, on WFMK, that County Commissioner, Mark Grebner of East Lansing, was indicted on income tax charges yesterday. In fact, he was not. However, Ingham County Commissioner, Pat Ryan, did appear in Ingham County Circuit Court yesterday to answer charges of income tax evasion. Another County Commissioner has admitted that he has not paid his 1978 taxes, and State Tax sources say that Commissioner Mark Grebner of East Lansing did not file a 1977 tax return either.

"Those Commissioners living outside of Lansing, but being paid by the County for holding meetings in Lansing may be subjected to the Lansing income tax provisions."

Thereafter, plaintiff filed the instant suit.

On September 1, 1981, defendant Black filed a motion for accelerated judgment, GCR 1963, 116.1(5). On September 16, 1981, defendant Me-gaMedia, Inc., filed a motion for summary judgment, GCR 1963, 117.2(3). After hearing arguments on the motions, the trial court granted both motions. Trial proceeded against defendant Runyon, following which the jury returned a verdict in favor of plaintiff for $7,500. Plaintiff appeals only from the orders granting defendant Black's motion and defendant MegaMedia's motion.

We first address plaintiff's claim that the trial court erred by granting MegaMedia's motion for summary judgment pursuant to GCR 1963, 117.2(3). The trial court found that Runyon was not an agent or employee of MegaMedia and that there was no genuine issue of fact as to MegaMedia's actual malice.

Plaintiff does not contest the trial court's ruling that he was a public official, and, in fact, plaintiff argues from that premise. Hence, plaintiff also concedes that the *New York Times Co v Sullivan,* 376 US 254; 84 S Ct 710; 11 L Ed 2d 686 (1964), actual malice standard applies to the situation herein. Actual malice is an element which a plaintiff must prove in order to recover when the plaintiff is a public official or public figure. See *Postill v Booth Newspapers, Inc,* 188 Mich App 608, 618-619; 325 NW2d 511 (1982). See also *Curtis Publishing Co v Butts,* 388 US 130; 87 S Ct 1975; 18 L Ed 2d 1094 (1967); *Hayes v Booth Newspapers, Inc,* 97 Mich App 758; 295 NW2d 858 (1980).

Actual malice is defined as knowledge that the published statement was false or as reckless disregard as to whether the statement was false or not. *New York Times Co v Sullivan, supra; Zachrick v Booth Newspapers,* 119 Mich App 72; 325 NW2d

630 (1982). Reckless disregard for the truth is not established merely by showing that the statements were made with preconceived objectives or insufficient investigation. *Johnson v The Herald Co,* 116 Mich App 523, 526; 323 NW2d 468 (1982). Furthermore, ill will, spite or even hatred, standing alone, do not amount to actual malice. *Postill v Booth Newspapers, Inc, supra,* p 626. "Reckless disregard" is not measured by whether a reasonably prudent man would have published or would have investigated before publishing, but by whether the publisher in fact entertained serious doubts concerning the truth of the statements published. *Postill v Booth Newspapers, Inc, supra,* pp 624-625.

Plaintiff first contends that Runyon possessed the required malice and this malice should have been imputed to MegaMedia because Runyon was MegaMedia's agent.

The general rule as to the liability of corporations for defamatory utterances of their agents was set forth in *Poledna v Bendix Aviation Corp,* 360 Mich 129, 139-140; 103 NW2d 789 (1960), as follows:

" 'There is no longer any doubt that a corporation may be held liable for slander uttered by an agent while in the discharge of his duty as agent and in relation to the matter about which his duty as agent permits or requires him to act, in the same way and to the same extent as an individual could be held liable for the same slander.' *Priest v Central States Fire Ins Co,* 223 Mo App 122, 124; 9 SW2d 543 (1928)."

After reviewing the pleadings, affidavits, depositions, and other documentary evidence, and giving the benefit of any reasonable doubt as to the existence of an issue of fact to plaintiff, we conclude that there was no error on the part of the

trial court in finding that Runyon was not an agent of MegaMedia.

The evidence indicated that the Ingham County News executed an agreement with defendant MegaMedia, which provided that MegaMedia would broadcast advertisements for the Ingham County News, in exchange for which the Ingham County News would provide news stories to MegaMedia for radio broadcasting. Runyon was an employee of the Ingham County News. According to Runyon and two other affiants, Runyon was acting pursuant to the above agreement when he called in the news report in question. In addition, the evidence indicated that MegaMedia had no control over Runyon, nor did it otherwise direct his work. MegaMedia did not compensate Runyon for his work and did not have any right to discipline or fire him. MegaMedia's only control over the situation was to decide whether to broadcast Runyon's report. Plaintiff presented no evidence to the contrary. In light of the above facts, Runyon was not an agent of MegaMedia, and Runyon's malice cannot be imputed to MegaMedia.

In the alternative, plaintiff contends that, even if Runyon's malice cannot be imputed to MegaMedia, plaintiff's allegations were sufficient to present a genuine issue of material fact as to whether there was actual malice on the part of MegaMedia. A review of the record reveals that the trial court improperly granted summary judgment in favor of MegaMedia because plaintiff's allegations are sufficient to raise a question of fact as to whether there was actual malice on the part of MegaMedia.

In *Steadman v Lapensohn,* 408 Mich 50, 55; 288 NW2d 580 (1980), the Supreme Court stated:

"It is clear that the actual malice necessary to defeat

a conditional privilege can be established by inference. Indeed, given the very subjective nature of the test for actual malice, circumstantial evidence may be the only kind available on the issue. In this case, we do not know whether a factfinder would infer actual malice from the present record. However, it is clear that the record was sufficient to create a genuine issue of fact as to that question." (Footnotes omitted.)

The person having responsibility for the broadcast at WFMK was MegaMedia's news director, David Downing. In his affidavit, plaintiff alleged the following:

"3. Plaintiff will also be able to show at trial that David Downing, WFMK's news director, knew or had reason to believe that the broadcast was false in that:

"A. Mr. Downing knew or should have known that an 'indictment' as reported, would require a grand jury, and there was no grand jury sitting in the county.

"B. Mr. Downing knew or should have known that an indictment is done by a grand jury and not by the district court.

"C. Mr. Downing knew or should have known that the Ingham County District Court has no jurisdiction over either Lansing or federal tax charges, and would not be a proper venue as to state tax charges against Mr. Grebner.

"D. Mr. Downing knew that the report that Grebner 'had no comment *today*' was false because he knew that the recording had been made October 31 for broadcast November 1, and that plaintiff could not, by October 31 have declined comment 'today' (the date of the broadcast).

"E. Mr. Downing knew or should have known that plaintiff was an East Lansing commissioner and was not employed in Lansing and that defendant's report that he was so employed in Lansing was false.

"F. Mr. Runyon's use of the word 'Democrat' as an adjective (instead of 'Democratic') is a use practiced only by highly partisan Republicans who refuse to call

the Democratic Party by its proper name for fear of conceding that Democrats are democratic. Mr. Downing knew from that usage in report that Mr. Runyon was a partisan opponent of Mr. Grebner's, and had reason to suspect the veracity of the report.

"G. Mr. Downing further knew or should have known of Mr. Runyon's partisan bias against plaintiff in that: (A) Mr. Runyon was a former public official elected as a Republican and (B) Mr. Runyon had recently stated, in a publicly printed column (attached hereto as exhibit A), that plaintiff Grebner 'will have to go'.

"H. Plaintiff is informed and believes and alleges on information and belief that defendant Runyon had never provided any similar news stories for broadcast. Because defendants' affidavits do not specify any particular news stories, and because only defendant knows what stories they refer to, plaintiff cannot at this time present material facts to oppose defendant's claim in this respect because such facts are known only to persons whose affidavits plaintiff cannot procure, that is the defendants.

"I. As shown by defendant MegaMedia's answer to the complaint (¶¶ 30-31), defendant MegaMedia acted with reckless disregard for the truth when, in spite of all the above, it ran the story without any attempt to confirm it whatsoever.

"J. Plaintiff cannot present facts showing the actual state of mind of defendant Runyon or defendant MegaMedia's other agents and employees or what knowledge they actually held for the reason that their actual state of mind is known only to defendant Runyon and agents and employees of MegaMedia, Inc., whose affidavits plaintiff cannot procure because plaintiff is suing defendant Runyon and defendant MegaMedia, Inc., and defendant Runyon and defendant MegaMedia, Inc.'s, employees are hostile to plaintiff."

MegaMedia responded to the plaintiff's allegations with affidavits stating that prior to October 31, 1979, Runyon had supplied WFMK with news stories for broadcast and these stories proved cor-

rect. Thus, MegaMedia never had any reason to believe that the content of the broadcasts Runyon provided on October 31, 1979, was anything but completely truthful. Relying upon MegaMedia's assertion that MegaMedia had been given no reason to question the truth of Runyon's statements, the trial court found that plaintiff had not alleged actual malice on the part of MegaMedia. However, because MegaMedia's bare allegation that Runyon was accurate in the past does not answer plaintiff's allegations that MegaMedia's broadcast of this news report was made with reckless disregard as to whether the news report was false or not, we find that there was a genuine issue of material fact as to whether MegaMedia had reason to question the truth of Runyon's statements in this particular news report. More particularly, there was a genuine issue as to whether MegaMedia, in fact, entertained serious doubts concerning the truth of the statements published and whether the failure to make a phone call verifying the report amounted to reckless disregard as to the truthfulness of the report. We find that this matter should have been left to the trier of fact. Where the credibility of a witness or deponent is crucial, summary judgment should not be granted. Plaintiff's allegations were sufficient to withstand a motion for summary judgment.

We next address plaintiff's claim that the trial court erred by granting accelerated judgment in favor of defendant Black on the basis that plaintiff did not file his complaint naming Black as a defendant within the applicable period of limitations. GCR 1963, 116.1(5). Although plaintiff agrees that the one-year statute of limitations applicable to libel and slander actions, MCL 600.5805, subds (1), (7); MSA 27A.5805, subds (1), (7), had run against Black by the time plaintiff's amended com-

plaint was filed adding Black as a defendant, plaintiff contends that the limitation period was extended because Black fraudulently concealed his identity and the claim which plaintiff had against him.

In reviewing motions for accelerated judgment, courts must accept all well-pled allegations of the nonmoving party as true. It is improper to grant a motion for accelerated judgment where factual issues exist. *Tonegatto v Budak,* 112 Mich App 575, 579; 316 NW2d 262 (1982).

On October 31, 1979, Black allegedly confirmed information given to Runyon that plaintiff had been charged with criminal tax evasion. Based upon this, and information from other sources, on October 31, 1979, Runyon called into WFMK the defamatory news report in question. The report was broadcast the next day, November 1, 1979. On March 6, 1980, plaintiff filed this defamation action against Robert Runyon and MegaMedia, Inc., owner of WFMK. On January 16, 1981, plaintiff filed his first amended complaint, dated December 10, 1980, in which he added Robert Black as a defendant. In that complaint plaintiff alleged that Black originally told Arlo Earegood the defamatory story on October 31, 1979. Subsequently, Earegood told Runyon the story, and later on the same day, October 31, 1979, Black confirmed to Runyon that plaintiff was being investigated on tax charges and would appear in court on those charges the following day. Plaintiff contends that by this statement, Black meant, and was understood to mean, that plaintiff was being charged with criminal tax evasion. The complaint further alleged that Black told plaintiff's counsel that he had not talked to Runyon on October 31, 1979, and that Black failed to appear at a scheduled deposi-

tion on October 20, 1980. Black asserted that he failed to appear at the deposition because of an illness. Finally, the amended complaint stated that Black and others fraudulently concealed the existence of plaintiff's claim against him and his identity for purposes of that claim pursuant to MCL 600.5855; MSA 27A.5855. Plaintiff contended that he did not discover the existence of his claim against Black and the latter's identity until December 1, 1980, when plaintiff's attorney received the amended answers to certain interrogatories dated November 24, 1980.

We find that the trial court properly granted Black's motion for accelerated judgment. There were no disputed questions of fact presented. Plaintiff's reliance upon MCL 600.5855; MSA 27A.5855 is misplaced. MCL 600.5855; MSA 27A.5855 states:

"If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations."

In the context of this statute: "Fraudulent concealment means employment of an artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action. The acts relied on must be of an affirmative character and fraudulent." *De Haan v Winter,* 258 Mich 293, 296; 241 NW 923 (1932). See *Burton Twp v Speck,* 378 Mich 213; 144 NW2d 347 (1966); *International Union United Automo-*

*bile Workers of America v Wood,* 337 Mich 8; 59
NW2d 60 (1953). In the instant case, plaintiff has
failed to allege any facts that would support such
a conclusion. Black's mere silence or inaction does
not amount to fraudulent concealment. *Mc-
Naughton v Rockford State Bank,* 261 Mich 265,
268-269; 246 NW 84 (1933). It has been repeatedly
held that a delay in instituting suit cannot be
excused on the ground of fraudulent concealment
where the failure to discover is attributable to
plaintiff's own neglect. See *Kroes v Harryman,* 352
Mich 642; 90 NW2d 444 (1958); *Janiszewski v
Behrmann,* 345 Mich 8; 75 NW2d 77 (1956); *Tone-
gatto v Budak,* 112 Mich App 575; 316 NW2d 262
(1982).

Plaintiff, by his own deposition testimony, ad-
mitted that he obtained information on the day of
the broadcast, or soon thereafter, that indicated
that defendant Black was the source of the defam-
atory newscast. In fact, according to plaintiff's
deposition testimony, Runyon told plaintiff that he
received his information from Black. Surely this
information should have, at the very least, pro-
vided a sufficient reason for further investigation.
Consequently, not only has plaintiff failed to estab-
lish the existence of any affirmative acts that
would amount to fraudulent concealment, but also
the facts show that plaintiff knew of Black's exis-
tence, and of the likelihood that he had a claim
against Black, as early as the day of the broadcast.

Summary judgment in favor of MegaMedia is
reversed, and we remand to the trial court for a
trial on the merits. Accelerated judgment in favor
of Black is affirmed. We do not retain jurisdiction.