DIENES v ASSOCIATED NEWSPAPERS, INC

Docket No. 72285. Submitted March 19, 1984, at Detroit.—Decided May 21, 1984. Leave to appeal denied, 419 Mich __.

George Dienes filed a defamation action against Associated Newspapers, Inc., the Michigan Humane Society, WXYZ, Inc., and others in Wayne Circuit Court alleging that the defendants had defamed him during the investigation and media coverage of the investigation into a charge that several cattle were starving on Dienes's farm. WXYZ, Inc., moved for summary judgment alleging that plaintiff had presented no genuine issues of material fact from which actual malice on the part of WXYZ could be inferred. The court, Marianne Battani, J., granted WXYZ's motion for summary judgment after finding that WXYZ had a qualified privilege to report on matters of public interest, that the activities of the Humane Society were matters of public interest, and that there was no evidence that statements made by WXYZ's reporter covering the investigation were made with actual malice. Plaintiff appeals. *Held:*

1. The trial court did nor err in finding that the plaintiff failed to present sufficient evidence of malice to raise a genuine issue of material fact.

2. The trial court made an erroneous finding of fact that

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 50 Am Jur 2d, Libel and Slander §§ 126, 302.

[1, 2] 58 Am Jur 2d, Newspapers, Periodicals, and Press Associations § 24.

What constitutes actual malice, within Federal Constitutional rule requiring public officials and public figures to show actual malice. 20 ALR3d 988.

Actionability of statement imputing incapacity, inefficiency, misconduct, fraud, dishonesty, or the like to public officer or employee. 53 ALR2d 8.

[2] 50 Am Jur 2d, Libel and Slander § 192 *et seq.*

58 Am Jur 2d, Newspapers, Periodicals, and Press Associations § 20.

State constitutional protection of allegedly defamatory statements regarding private individual. 33 ALR4th 212.

[3, 5] 73 Am Jur 2d, Summary Judgment §§ 26, 27.

[4] 73 Am Jur 2d, Summary Judgment § 36.

[5, 6] 50 Am Jur 2d, Libel and Slander § 333.

WXYZ's reporter knew that the Humane Society's veterinarian had indicated that the cattle were malnourished, when ruling on WXYZ's motion, but that error was harmless beyond a reasonable doubt.

Affirmed.

1. LIBEL AND SLANDER — DEFAMATION — PUBLIC OFFICIALS — PUBLIC FIGURES — ACTUAL MALICE.

A publisher of defamatory statements against a public official or a public figure who is not a public official is constitutionally protected from liability for libel absent proof that the statements were published with "actual malice", defined as knowledge of the statement's falsity or reckless disregard for its truth or falsity.

2. LIBEL AND SLANDER — DEFAMATION — MATTERS OF PUBLIC INTEREST — MEDIA — QUALIFIED PRIVILEGE — ACTUAL MALICE.

The media has a qualified privilege in Michigan to report on matters of public interest; private individuals filing defamation suits against the media must show actual malice, *i.e.*, that the defamatory statements were published either with knowledge of their falsity or with reckless disregard for their truth or falsity.

3. JUDGMENTS — SUMMARY JUDGMENT — ISSUE OF MATERIAL FACT.

The traditional approach in considering whether to grant or deny motions for summary judgment on the ground that there is no genuine issue of material fact is to apply a liberal standard for finding the existence of a genuine issue of fact (GCR 1963, 117.2[3]).

4. JUDGMENTS — SUMMARY JUDGMENT — ISSUE OF MATERIAL FACT — CREDIBILITY OF AFFIANT OR WITNESS.

The granting of summary judgment is discouraged and hardly ever appropriate where a disputed issue of material fact turns upon the credibility of an affiant or witness whose deposition has been taken (GCR 1963, 117.2[3]).

5. LIBEL AND SLANDER — DEFAMATION — MEDIA — ISSUE OF MATERIAL FACT — ACTUAL MALICE — SUMMARY JUDGMENT.

The mere allegation of actual malice in a media defamation action is not, without more, sufficient to raise a material issue of fact sufficient to defeat a motion for summary judgment by the defendant.

6. LIBEL AND SLANDER — DEFAMATION — MEDIA — ACTUAL MALICE — SUMMARY JUDGMENT — ISSUE OF MATERIAL FACT.

A plaintiff in a defamation action against a media defendant need only present evidence of facts from which a jury could reasonably infer actual malice on the part of the defendant to defeat a motion for summary judgment on the ground that there is no genuine issue of material fact (GCR 1963, 117.2[3]).

*Levon G. King, P.C.* (by *Lee C. Wenskay*), for plaintiff.

*Butzel, Long, Gust, Klein & Van Zile* (by *Richard E. Rassel* and *Daniel P. Malone*), for defendant.

Before: M. J. KELLY, P.J., and BEASLEY and J. N. O'BRIEN,* JJ.

PER CURIAM. Plaintiff, George Dienes, filed this defamation action on March 9, 1981, in Wayne County Circuit Court against Associated Newspapers, Inc., Sienna LaRene, the Michigan Humane Society, WXYZ, Inc., and John and Mary Doe, jointly and severally. On May 17, 1983, WXYZ, Inc. (defendant), only moved for summary judgment, GCR 1963, 117.2(3), alleging that the plaintiff had presented no genuine issue of material fact. The motion was heard on June 10, 1983, and granted by the Wayne Circuit Court. Plaintiff appeals as of right.

On March 11, 1980, the Michigan Humane Society received a report that a number of cattle were apparently starving on plaintiff's farm in Belleville. The Society obtained a search warrant and conducted an examination of the cows on March 12, 1980. Present were Sienna LaRene, a Humane Society attorney; Dr. Earl Milliman, a Humane Society veterinarian; Michigan State Troopers

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Carey Wise and Peter Munoz; plaintiff's next-door neighbor Harold Dubois; and a WXYZ television news crew consisting of a cameraman and reporter Rich Fisher. The plaintiff was not at home when the group arrived, but returned during the investigation. He was advised by Ms. LaRene to retain counsel and have his attorney contact her.

That night a brief report of the investigation was shown on the 11 o'clock news on WXYZ-TV. The audio transcript of the entire report is as follows:

"*Rich Fisher:* It was late this afternoon when State Police and officials from the Michigan Humane Society converged on this farm in Belleville after receiving a tip that a herd of cows was starving. At first no one was home, so, with search warrants in hand, it was off to examine the cows. What was found was shocking.

"*Sienna LaRene:* They're in extremely poor condition. They're very thin, I would say, to the point of being emaciated. You know at this time of year they have a very furry heavy coat. Well, under that coat all you got is bones, just skeletons most of them, this is a very bad situation.

"*Rich Fisher:* While the tests were being conducted, the owner of the cows came home and needless to say he was shocked.

*George Dienes:* Harrassment of some sort. I want to find out what it's all about. I just came back from a (meeting) I was at and that is what I want to find out what is going on here now.

"*Rich Fisher:* These cows are finally getting a little bite to eat but as you can see that has not always been the case. The Michigan Humane Society says it will prosecute the owner of these cows to the fullest extent. That could be a $500 fine and/or 90 days in jail.

"From Belleville, Rich Fisher, Channel 7 Action News Reporting."

The report was accompanied by film of the

plaintiff, of the plaintiff's cattle, and the superimposition of the plaintiff's name across the screen. The film was viewed by the trial court and by this panel as an adjunct to oral arguments on appeal.

Although later developments are not clear from the record, it appears that the Society decided not to prosecute the plaintiff.

In ruling on defendant's motion for summary judgment, the trial court first found that WXYZ had a qualified privilege to report on matters of public interest and that the activities of the Humane Society were matters of public interest. The court therefore concluded that the plaintiff could not recover unless he could prove that WXYZ's reporter made the statements with actual malice.

The court then applied traditional principles of summary judgment law and reviewed all of the evidence developed up to the time defendant filed its motion for summary judgment, 27 months after the filing of the complaint, to determine whether there were genuine issues of fact from which defendant's actual malice could be properly inferred. To clarify its analysis, the court separated Fisher's remarks into two categories. Fisher's first statement related to the condition of the cattle:

"These cows are finally getting a little bite to eat but as you can see that has not always been the case."

Fisher's second statement related to the Society's intent to prosecute:

"The Michigan Humane Society says it will prosecute the owner of these cows to the fullest extent. That could be a $500 fine and/or 90 days in jail."

After viewing the evidence in a light most favorable to the plaintiff, the court concluded that there

was no evidence from which to infer that either statement was made with actual malice. The court further found that all of the evidence tended to establish the truth of Fisher's statement with regard to the intent of the Society to prosecute. Summary judgment was accordingly granted, prompting the present appeal. Plaintiff raises two issues, neither of which require reversal.

# I

Did the trial court err in finding that the plaintiff failed to present sufficient evidence of malice to raise a genuine issue of material fact?

We initially find that the trial court properly required plaintiff to show evidence of "actual malice" on the part of defendant or its employee in order to withstand defendant's motion for summary judgment. There is no dispute that plaintiff is a private individual pursuing a defamation action against the media. We agree with the trial court that activities of the Humane Society are matters of public interest and that its search of plaintiff's farm involved plaintiff in a legitimate matter of media interest.

In *New York Times Co v Sullivan,* 376 US 254; 84 S Ct 710; 11 L Ed 2d 686 (1964), the United States Supreme Court began reconciling First Amendment privileges with the protections offered by the law of defamation. The Court held that a publisher of defamatory statements against a public official is constitutionally protected from liability for libel absent proof that the statements were published with "actual malice", defined as knowledge of the statement's falsity or reckless disregard for its truth or falsity. This constitutional protection was extended to published statements concerning public figures who are not public offi-

cials in *Curtis Publishing Co v Butts,* 388 US 130; 87 S Ct 1975; 18 L Ed 2d 1094, *reh den* 389 US 889; 88 S Ct 11; 19 L Ed 2d 197 (1967). However, a further extension of the actual malice standard to statements about individuals who are neither public officials nor public figures but who are involved in matters of public interest was rejected in *Gertz v Robert Welch, Inc,* 418 US 323; 94 S Ct 2997; 41 L Ed 2d 789 (1974). The *Gertz* Court expressly left it to the states to define the standard of liability in such cases.

Michigan courts have long recognized that the media has a "qualified privilege" to report on matters of public interest. *Lawrence v Fox,* 357 Mich 134; 97 NW2d 719 (1959). In *Peisner v Detroit Free Press, Inc,* 82 Mich App 153, 164; 266 NW2d 693 (1978),[1] this Court applied the "actual malice" standard to cases of qualified privilege, thus requiring private individuals filing defamation suits against the media to show that the defamatory statements were published either with knowledge of their falsity or with reckless disregard for their truth or falsity. This is the standard that must be met by plaintiff.

Defendant obtained summary judgment under GCR 1963, 117.2(3), on the ground that pliantiff had failed to develop facts sufficient to support a finding of actual malice on the part of defendant or its employee and that defendant was therefore entitled to judgment as a matter of law. Plaintiff alleges two distinct errors on the part of the trial court. Plaintiff first contends that the trial court improperly judged the credibility of affiant Rich

[1] Plaintiff urges us to hold disposition of this case pending the Supreme Court's decision in *Peisner v Detroit Free Press, Inc (Peisner #2),* 104 Mich App 59; 304 NW2d 814 (1981), *lv gtd* 418 Mich 875 (1983). We have no indication that disposition of that pending appeal is imminent and therefore decline to hold this decision in abeyance.

Fisher and based its grant of summary judgment on the truth of his affidavit. We disagree.

In considering whether to grant or deny motions for summary judgment under GCR 1963, 117.2(3), the traditional approach is to apply a liberal standard for finding the existence of a genuine issue of fact. *Rizzo v Kretschmer,* 389 Mich 363, 372; 207 NW2d 316 (1973). We agree with plaintiff that, where a disputed issue of material fact turns upon the credibility of an affiant or witness whose deposition has been taken, summary judgment is particularly discouraged and hardly ever appropriate. *Durant v Stahlin,* 375 Mich 628, 650-651; 135 NW2d 392 (1965) (Justice SOURIS's concurring opinion).

Plaintiff quotes *Arber v Stahlin,* 382 Mich 300, 308-309; 170 NW2d 45 (1969), *cert den* 397 US 924; 90 S Ct 927; 25 L Ed 2d 103 (1970), as authority for reversing the trial court's order on the ground that it was based on the credibility of an affiant:

"Where actual malice, in the sense that an alleged defamer knew the statement to be false or acted in reckless disregard of its truth or falsity, is alleged in any of the pleadings, the crucial and often determinative factor is credibility. As we have repeatedly emphasized, summary judgment is not available whenever a presented issue of material fact turns upon the credibility of an affiant or witness whose deposition has been taken. * * *

"It is simply not legally sufficient to say that since plaintiffs did not prove by their affidavits a publication with knowledge of falsity or reckless disregard of truth or falsity, the fact of actual malice did not exist. The determination of actual malice depends on more than a mere denial; it must be resolved from a study of the witness on the stand, his interest or lack of interest in the case, his role in the publication of the alleged libel, and the many other factors making up the issue of credibility.

"We hold that where, as here, the credibility of a witness or deponent is crucial, summary judgment should not be granted." (Citation omitted.)

We concur with the principle announced in *Durant v Stahlin* and *Arber v Stahlin,* regarding the suspicion with which summary judgments based on affidavits are to be regarded. We believe, however, that this principle is consistent with the general rule that requires a party opposing a motion for summary judgment under subrule (3) to come forward with evidence establishing a genuine issue of material fact. In *Durant v Stahlin,* for example, the Supreme Court affirmed the lower court's grant of summary judgment because the plaintiff had failed to submit any evidence, by deposition, affidavit or otherwise, to contradict the defendants' affidavits. In *Arber v Stahlin,* the trial court's summary judgment was reversed because there was a genuine conflict in the evidence presented at the summary judgment proceeding. The plaintiff had presented an affidavit by one of the defendants alleging that the defendant newspaper promised editorial support for Senator Stahlin if he would publicly attack Durant. The court held that such evidence may support a jury's reasonable inference that the defendants were out to "get Durant".

In the instant case, summary judgment was not granted on the basis of an interested party's affidavit. We have thoroughly reviewed the trial court's reasons for granting summary judgment in this case as set forth in its opinion, delivered from the bench, and we find no reference to any affidavit filed by Rich Fisher. It is clear to us that the trial court based its decision on all of the other evidence developed by the parties during discovery. With regard to Fisher's statement on the condition

of the cattle, the court found that there was a material issue of fact as to the truth of the statement since there was some evidence that the appearance of the cows was the result of inbreeding rather than lack of food. The court went on, however, to find that there was "absolutely no evidence whatsoever" to show that Fisher made the statement knowing it to be false or that he made it with reckless disregard for the truth. The court reasoned that, at the time Fisher commented upon the condition of the cattle, he knew that a search warrant had been issued at the request of the Humane Society and that the cows appeared thin and malnourished to the naked eye. Fisher had personally observed the condition of the cattle and all of the witnesses whose affidavits or depositions were taken during discovery, including plaintiff's own expert witness, agreed that the cows appeared thin and in need of additional food. We agree with the trial court's conclusion that plaintiff simply failed to come forth with any evidence or facts from which a jury could reasonably infer that defendant acted with actual malice and that all of the evidence developed during discovery suggests that Fisher's report was reasonable.

With regard to Fisher's remarks about the Society's intent to prosecute, the trial court found that all of the evidence tended to prove that the statement was true at the time that it was made. Significantly, the attorney for the Humane Society testified by deposition that she had fully intended to file charges against plaintiff at the time the news report was released and had even prepared the necessary papers. The trial court thus concluded that plaintiff did not and could not develop facts which would establish that Fisher's statement was false. The court went on, however, to

hold that even if there were a material issue of fact regarding the falsity of Fisher's statement there was again no evidence from which to infer actual malice on the part of defendant in issuing its report. It is undisputed that, prior to making the statement, Fisher knew that a search warrant had been issued based on a report of starving cows, that he knew that the attorney for the Society viewed the situation as "very bad", and that he knew that the appearance of the cows supported a conclusion that they were starving. We agree with the trial court's analysis of the evidence and again point out that plaintiff has simply failed to come forth with any evidence to support a finding of malice on the part of the defendant.

Plaintiff alternatively argues that even if this Court refuses to find that the trial court improperly based its decision on the credibility of Fisher's statements in his affidavit, summary judgment is nevertheless improper on the ground that plaintiff's mere allegation of actual malice is sufficient in itself to raise an issue of fact.

In support of his position, plaintiff cites *Parks v Johnson,* 84 Mich App 162; 269 NW2d 514 (1978), *lv den* 405 Mich 820 (1979), in which a school teacher filed a libel case against the principal for written statements made in the course of her administrative duties regarding the plaintiff's job performance.

This Court affirmed the trial court's denial of summary judgment under GCR 1963, 117.2(3). In *Parks,* the only evidence presented by the plaintiff to oppose the defendant's motion related to the plaintiff's character but did not reflect on the disputed issue of the defendant's malice. The *Parks* Court reasoned that, since character evidence tended to refute the defamatory allegations

at issue, such evidence could support an inference of malice under the liberal standard of *Rizzo.* Plaintiff in this case argues that, under the *Parks* rationale, evidence tending to show that the cattle were not actually starving would arguably be sufficient to raise a fact issue on the subject of defendant's malice. Plaintiff relies on the affidavit of Dr. Juchartz (not included in the materials provided this Court) as evidence that the cows were not starving.

The *Parks* rationale was disapproved, however, in *Hayes v Booth Newspapers, Inc,* 97 Mich App 758, 774-775; 295 NW2d 858 (1980):

"While this Court has previously ruled that the mere allegation of malice is sufficient to state a cause of action for defamation, *Parks v Johnson,* 84 Mich App 162; 269 NW2d 514 (1978), *lv den* 405 Mich 820 (1979); *Brunn v Weiss,* 32 Mich App 428; 188 NW2d 904 (1971), Federal courts have held that a plaintiff seeking to recover for an alleged libel must make an affirmative showing of facts from which defendant's probable knowledge of falsity can be constitutionally sustained. See, *e.g., Cerrito v Time, Inc,* 302 F Supp 1071, 1075 (ND Cal, 1969), *aff'd* 449 F2d 306 (CA 9, 1971).

"In commenting on the use of the summary judgment mechanism in defamation actions, the court in *Cerrito, supra,* reasoned that:

" 'Summary judgment is an integral part of the constitutional protection afforded defendants in actions such as this. Plaintiff has purposely been given the heavy burden of proving actual malice * * *. When it has been established * * * that he cannot meet it, the First Amendment makes it incumbent upon the Court to grant defendant's motion for summary judgment.' 302 F Supp 1071, 1075-1076.

"Therefore, the mere allegation of actual malice is not, without more, sufficient to raise a material issue of fact, particularly where, as here, defenses of a constitutional dimension are raised."

We prefer to follow the *Hayes* analysis, as we find it consistent with well-established principles of summary judgment law. Because we have already concluded that plaintiff simply failed to demonstrate any facts from which a juror could reasonably infer actual malice on the part of the defendant, we affirm the trial court's grant of summary judgment under the *Hayes* analysis.

We note that a panel of this Court has recently decided *Lins v Evening News Ass'n,* 129 Mich App 419; 342 NW2d 573 (1983), which appears to significantly alter summary judgment law as applied in libel cases against media defendants. Expressing dissatisfaction with the established practice of giving the benefit of any doubt to the nonmoving party in a summary judgment proceeding in cases of media libel, the *Lins* Court stated:

"We believe that, on summary judgment motions involving alleged libel of public officials or public figures by the media, if any benefit of the doubt is to be given, it must go to the media under First Amendment constitutional rights of free speech and free press."

The *Lins* panel went on to conclude that clear and convincing proof is necessary to establish a genuine issue of fact concerning malice sufficient to defeat summary judgment motions in media defamation cases.

It is too soon to determine whether the *Lins* departure from traditional summary judgment law will be followed in media defamation cases. At this juncture, we decline to hold that any "benefit of the doubt" must go to the media defendant nor do we hold that plaintiff must come forward with clear and convincing proof that a genuine issue of fact exists with regard to malice. We instead believe that plaintiffs need only present evidence of

facts from which a jury could reasonably infer actual malice on the part of the defendant. Failure by a news reporter to verify facts does not indicate malice. *Peisner v Detroit Free Press, surpa,* p 166.

Plaintiff asserts, in language reminiscent of the Continental Op,[2] that the issue is "what did Rich Fisher know and when did he know it?" He then claims that there is no evidence that the reporter knew when the cattle had or had not been fed or what caused their emaciated appearance. It can be established, however, from the broadcast transcript alone, that Fisher knew that the Humane Society had received a tip that the cows were starving. Fisher also heard Sienna LaRene's statement that the cows were "thin", "emaciated", "just skeletons". It is also undeniable that Mr. Fisher observed the cows. Affidavits submitted by other defendants in this case establish that a number of observers concluded, from the appearance of the cattle, that they were severely malnourished. Against the indicia of reasonable basis for Mr. Fisher's comment, plaintiff offered only the affidavit of Dr. Juchartz, which asserted (apparently) that, despite their appearance, the cows were not actually starving. Under current case law, this evidence is clearly insufficient to raise a factual issue regarding malice.

## II

In ruling on defendant's motion for summary judgment, did the trial court improperly make findings of fact?

Plaintiff contends that the trial court improperly made findings of fact. What the "no fact-finding"

---

[2] Continental Op is a fictional character created by Dashiell Hammett as the anonymous narrator in some of his stories.

rule of *Baker v Detroit,* 73 Mich App 67; 250 NW2d 543 (1976), forbids is fact-finding on disputed issues. We find that the trial court did make one erroneous finding when ruling on defendant's motion, but that this error was harmless beyond a reasonable doubt. The finding was that Fisher knew that Dr. Milliman, the Society's veterinarian, had indicated that plaintiff's cattle were malnourished. Although Dr. Milliman did so indicate, and the two men were at plaintiff's farm at the same time, it cannot be conclusively shown that the veterinarian made his opinion known to the reporter. The other observations of the trial court were not in error. Fisher knew of the search warrant—a fact borne out by Fisher's comments on film—and knew from personal observation that the cows were very thin and that a number of witnesses found the cows' appearance to be evidence of malnutrition. The trial court did not find that the cows actually were starving, but merely that there was a reasonable basis for Fisher's comments, a basis which was not effectively disputed by the plaintiff. In view of the more than adequate ground for the trial court's ruling, the finding regarding the single erroneous statement was harmless error.

Affirmed.

BEASLEY, J., concurs in the result, but prefers the rationale of *Lins v Evening News Ass'n,* 129 Mich App 419; 342 NW2d 573 (1983), to cases like *Peisner v Detroit Free Press, Inc,* 82 Mich App 153; 266 NW2d 693 (1978).