KURZ v THE EVENING NEWS ASSOCIATION

Docket No. 73543. Submitted October 12, 1984, at Detroit.—Decided
    June 12, 1985. Leave to appeal applied for.

   Plaintiffs, Walter A. Kurz, J. Todd Kurz and Kevin Kurz, a minor
      by his next friend J. Todd Kurz, brought an action for libel
      against The Evening News Association, doing business as The
      Detroit News, and several of its employees. The action was
      based upon a newspaper article reporting on an altercation
      which occurred between Walter Kurz and his son J. Todd Kurz
      and several Detroit police officers. The Wayne Circuit Court,
      Irwin H. Burdick, J., granted summary judgment in favor of all
      the defendants, and plaintiffs appealed. *Held:*

      1. The defendants had a qualified privilege to report and
      comment upon matters of public concern. Thus, plaintiffs were
      required to make a showing of actual malice, that is, that
      defendants published untrue statements with knowledge that

---

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Libel and Slander § 497 *et seq.*
   What constitutes "publication" of libel in order to start running of
      period of limitations. 42 ALR3d 807.
[2] Am Jur 2d, Libel and Slander § 192 *et seq.*
   Who is a public official or otherwise within the federal constitu-
      tional rule requiring public officials to show actual malice. 19
      ALR3d 1361.
[3] Am Jur 2d, Libel and Slander § 484.
   See the annotations under Questions of Law or Fact in the ALR3d
      and 4th Quick Index.
[4] Am Jur 2d, Libel and Slander § 289 *et seq.*
   Libel by newspaper headlines. 95 ALR3d 660.
[5] Am Jur 2d, Libel and Slander §§ 174, 175.
   What constitutes actual malice, within federal constitutional rule
      requiring public officials and public figures to show actual malice.
      20 ALR3d 988.
[6] Am Jur 2d, Libel and Slander § 178 *et seq.*
   See the annotations under Libel and Slander in the ALR3d and 4th
      Quick Index.
[7] Am Jur 2d, Libel and Slander § 399 *et seq.*
   See the annotations under Libel and Slander in the ALR3d and 4th
      Quick Index.

the statements were false or with reckless disregard for whether the statements were false or not.

2. Plaintiffs' claim that the defendants published the article with actual malice was not sufficient, standing alone, to survive the defendants' motion for summary judgment. Plaintiffs failed to plead any facts upon which they based their conclusion that the defendants acted with knowledge of or in reckless disregard of the truth or to present any evidence to establish that a genuine issue of material fact existed. Summary judgment, therefore, was properly granted.

Affirmed.

1. LIBEL AND SLANDER — DEFAMATION.

The elements of an action for defamation are (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

2. LIBEL AND SLANDER — NEWSPAPERS — QUALIFIED PRIVILEGE.

A newspaper has a qualified privilege to report matters of public concern; the privilege applies whether or not the plaintiff is a public official.

3. LIBEL AND SLANDER — QUALIFIED PRIVILEGE — QUESTION OF LAW.

The initial determination of whether a defendant in a libel action is protected by a privilege is a question of law to be decided by the court.

4. LIBEL AND SLANDER — QUALIFIED PRIVILEGE — MISSTATEMENTS OF FACT.

Even misstatements of fact are not actionable in a libel suit where the defendant has a qualified privilege unless the misstatements are made with malice.

5. LIBEL AND SLANDER — ACTUAL MALICE — MEDIA DEFENDANTS.

A private person who seeks recovery from a media defendant for defamation which relates to a matter of legitimate public concern may not recover without proof of actual malice, that is, publication of an untrue statement with knowledge that the published statement was false or reckless disregard as to whether the statement was false or not.

6. LIBEL AND SLANDER — ACTUAL MALICE — RECKLESS DISREGARD FOR TRUTH.

Reckless disregard for whether a statement was false or not,

sufficient to show actual malice in its publication, is not measured by whether a reasonably prudent man would have published or would have investigated before publishing, but by whether the publisher, in fact, entertained serious doubts concerning the truth of the statement published.

7. LIBEL AND SLANDER — PLEADING — ACTUAL MALICE — SUMMARY JUDGMENT.

   A mere allegation that a defendant in a libel action against a media defendant knew that an allegedly libelous statement was untrue or that it was made with reckless disregard for the truth, without a pleading of the facts upon which the plaintiff bases his conclusion of actual malice, is insufficient to survive a motion for summary judgment.

*Walter A. Kurz,* for plaintiffs.

*Butzel, Long, Gust, Klein & Van Zile* (by *Richard E. Rassel* and *Keefe A. Brooks),* for defendants.

Before: HOOD, P.J., and BEASLEY and P. J. MARUTIAK,* JJ.

PER CURIAM. Plaintiffs, Walter A. Kurz, J. Todd Kurz and Kevin Kurz, appeal as of right from an order granting summary judgment, under GCR 1963, 117.2(1) and (3), to defendants, The Evening News Association, doing business as The Detroit News, and various employees of the Association.

This libel action arose out of the January 20, 1980, publication of the following article in The Detroit News:

"*Unhappy New Year*
"Attorney faces charges in attack on policeman
"Detroit attorney Walter Kurz was arraigned Saturday on charges of assaulting a police office *[sic]* with a shotgun during a predawn New Year's Day argument.
"Kurz, 59, of 18813 Chandler Park Drive, appeared before Visiting Recorder's Judge J. Patrick Denis on

---

* Circuit judge, sitting on the Court of Appeals by assignment.

two counts of assault with attempt to do great bodily harm less than murder. He was released under $10,000 personal bond. Examination is Jan. 28.

"Police said the 4:30 a.m. incident began when Kurz's son Jay, 18, was involved in a scuffle with Detroit officer Michael Hendrix.

"Henrix *[sic]* and his wife were leaving a party at the home of Detroit police Sgt. Edward Largewitz, *[sic]* who lives at 18821 Chandler Park Drive, next door to Kurz.

"There were conflicting reports regarding the fight between Hendrix and the younger Kurz, but at some point the youth called for help from his father and the elder Kurz appeared on the scene with a shotgun. Several other officers from the Largewitz *[sic]* party were in the driveway at this point.

"Police said Kurz, clad in pajamas, threatened to kill someone and fired one shot from his gun. No one was hit.

"There was no explanation at the delay in bringing the charges against Kurz.

"The younger Kurz was earlier charged with assault and battery in the incident."

In granting the motion for summary judgment, the trial court reasoned as follows:

"An examination of plaintiffs' complaint seeking damages for libel and a review of the documentation furnished the Court, leads to the conclusion that defendants are entitled to the summary relief requested. Plaintiffs' complaint is devoid of well-pleaded allegations of fact in support of their claim that the defendant, The Evening News Association, acting through its employees, and the individual defendants, acted with actual malice in publishing or causing to be published the allegedly defamatory article that appeared in the Detroit News on January 20, 1980. Factual inaccuracies per se in a newspaper article do not subject the publishers or authors of the article to damages for libel unless there is actual malice incident the publication. *New York Times v Sullivan,* 376 US 254; 84 S Ct 710; 11 L Ed 2d 686 (1964).

"Plaintiffs' complaint, more specifically, the allegations of malice therein, are simply conclusory and neither state a claim against the defendants premised upon libel nor raise a genuine issue of fact with reference thereto.

"Accordingly, defendants' motion for summary judgment must be granted under GCR 1963, 117.2(1) and 117.2(3)."

We agree with the trial court's conclusion and affirm.

On appeal, plaintiffs argue that summary judgment was erroneously granted. The four essential elements of an action for defamation are (1) a false and defamatory statement concerning plaintiff; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation per quod).[1]

In this case, we have not based decision on whether or not the statements in the article were false and defamatory, because the trial court did not appear to do so. However, noting that truth is a defense in a defamation action, we observe that measuring the truth of the newspaper article by the affidavit of plaintiff, Walter Kurz, the differences are slight and insubstantial.

In this case, defendants had a qualified privilege to discuss matters of public concern.[2] A news story about a matter of public concern is protected under the newspaper's qualified privilege of "fair

[1] *Postill v Booth Newspapers, Inc,* 118 Mich App 608, 618; 325 NW2d 511 (1982), *lv den* 417 Mich 1050 (1983), citing Restatement Torts (2d), § 558. Recently, *Postill* was cited with approval in *Curtis v Evening News Ass'n,* 135 Mich App 101, 103; 352 NW2d 355 (1984).

[2] *Gaynes v Allen,* 128 Mich App 42, 47; 339 NW2d 678 (1983).

comment".[3] The privilege applies whether or not plaintiff is a public official.[4] The initial determination of whether a privilege exists is a question of law to be decided by the court.[5] A newspaper reporter has the right to comment on matters of public importance. Where, as here, the privilege applies, even misstatements of fact are not actionable in a libel suit unless they are made with malice.[6] The defense of privilege rests upon considerations of public policy.[7]

In *Lawrence v Fox*,[8] where the defendant newspapers published articles that charged the plaintiff police superintendent with fraud and corruption, protection of criminals and manipulation of liquor licenses, the Supreme Court held that: "* * * the circumstances were such as to invest the defendants with a qualified privilege and the jury should have been so informed".[9] The *Lawrence* Court went on to say:

"There is no need, at this date in our history, to urge that it is necessary to free institutions that the press itself be free. Today it is. The real issue before us is how free. Governmental interference is not the only threat to its freedom. On the contrary, *a narrow or restrictive interpretation of the law of privilege in libel actions is equally dangerous.* The publisher often faces a cruel dilemma: The more serious the charge of wrongdoing by a public official, more urgent the need for its airing. Yet, the more serious the charge, the greater the

[3] *Lawrence v Fox*, 357 Mich 134; 97 NW2d 719 (1959).

[4] *Peisner v Detroit Free Press, Inc*, 82 Mich App 153, 161; 266 NW2d 693 (1978).

[5] *Swenson-Davis v Martel*, 135 Mich App 632, 636; 354 NW2d 288 (1984), *lv den* 419 Mich 946 (1984); *Lins v Evening News Ass'n*, 129 Mich App 419, 432; 342 NW2d 573 (1983).

[6] *Orr v Argus-Press Co*, 586 F2d 1108, 1113 (CA 6, 1978), *cert den* 440 US 960; 99 S Ct 1502; 59 L Ed 2d 773 (1979).

[7] *Lawrence, supra*, p 137.

[8] *Id.*

[9] *Id.*, p 146.

libel. It is in this uneasy and menacing situation that the law provides the publisher a sanctuary of sorts, the defense of privilege. It is no fortress, as we shall see. The defense interposed is that of privilege." *Lawrence, supra,* p 137. (Emphasis added.)

This common law qualified privilege is buttressed by the Michigan statute, MCL 600.2911(3); MSA 27A.2911(3), setting out a privilege to fairly and accurately report judicial proceedings, but the statute is not relied on here.

In *Dienes v Associated Newspapers, Inc,*[10] we held that a TV news report, which stated that the Michigan Humane Society intended to prosecute the owner of a herd of emaciated cattle, was qualifiedly privileged because the activities of the Humane Society are matters of public interest. In *Orr v Argus-Press Co,*[11] the Sixth Circuit United States Court of Appeals noted that, under Michigan law, defendant magazine had a qualified privilege to print a story which accused plaintiff of fraud. In *Schultz v Newsweek, Inc,*[12] the Sixth Circuit held that, under Michigan law, defendants' publication of an article naming plaintiff as an "underworld figure" and implicating him in the disappearance of Jimmy Hoffa was protected by a qualified privilege.

We are aware that in *Rouch v Enquirer & News of Battle Creek,*[13] one panel of this Court said:

"As the Restatement implies, there is an important *distinction between matters which truly promote the public interest and matters which are merely interest-*

[10] 137 Mich App 272, 277; 358 NW2d 562 (1984), *lv den* 419 Mich 962 (1984).

[11] *Orr, supra.*

[12] 668 F2d 911 (CA 6, 1982).

[13] 137 Mich App 39, 51; 357 NW2d 794 (1984), citing 3 Restatement Torts (2d), § 598.

*ing to the public.* Under the Restatement formulation, media defendants enjoy a qualified privilege to report on matters which advance an important societal or public interest, not a qualified privilege to report on every matter which may be of interest to the public." (Footnote omitted, emphasis added.)

We are not convinced that the distinction referred to in the quoted statement is fully supported by the cases cited in *Rouch.* In fact, this formulation seems to be in conflict with the Supreme Court's broad view of the qualified privilege, as enunciated in *Lawrence, supra.* Reports of criminal charges and accusations are indeed matters in the public interest. If *Rouch* does apply, we are satisfied that publication does promote the public interest. This was not a gossip column article. Consequently, we decline to find that *Rouch* defeats defendants' qualified privilege to publish the article that is the subject of this case.

Where, as here, a qualified privilege exists, plaintiffs, in order to recover, must prove "actual malice" on the part of defendants.[14] In *Gaynes v Allen,*[15] we held that a private person who seeks recovery from a media defendant for defamation which relates to a matter of legitimate public concern may *not* recover without proof that defendant published the statement with knowledge of its falsity or with reckless disregard for its truth or falsity. In *Lins v Evening News,*[16] we said:

"Thus, with respect to the Michigan common-law qualified privilege, plaintiffs are faced with the same standard as with respect to the federal constitutional qualified privilege, namely, the necessity to prove actual malice, if plaintiffs are to overcome the Michigan

[14] *Peisner, supra,* pp 163-164.

[15] *Supra,* p 51.

[16] *Supra,* pp 434-435.

qualified privilege rule. The trial judge concluded that recent Michigan decisions indicate that the actual malice standard now followed in Michigan is that of *New York Times, supra.* We agree." (Footnote omitted.)

Thus, plaintiff is required to prove actual malice, that is, knowledge that the published statement was false or reckless disregard as to whether the statement was false or not.[17] Failure to properly investigate does not constitute actual malice.[18] Reckless disregard is not measured by whether a reasonably prudent man would have published or would have investigated before publishing, but by whether the publisher, in fact, entertained serious doubts concerning the truth of the statement published.[19]

Plaintiffs were not entitled to go to a jury with their claim of defamation because they pled no facts indicating that defendants acted with knowledge or in reckless disregard of the truth. Defendants filed affidavits indicating that they believed the article to be true. Plaintiffs' reliance on *Arber v Stahlin*[20] is misplaced because plaintiffs did not come forward with any evidence to establish that a genuine issue of material fact existed.[21]

There seems to be some disagreement among decisions of this Court concerning the showing a plaintiff must make to survive a summary judgment motion,[22] made by defendant, on the basis that actual malice cannot be shown. Contrary to

---

[17] *Grebner v Runyon,* 132 Mich App 327, 332-333; 347 NW2d 741 (1984).

[18] *Postill, supra,* p 626.

[19] *Grebner, supra,* p 333.

[20] 382 Mich 300, 308-309; 170 NW2d 45 (1969), *cert den* 397 US 924; 90 S Ct 927; 25 L Ed 2d 103 (1970).

[21] *Dienes, supra,* pp 279-280.

[22] Where plaintiff is a public figure or a public official, any benefit of the doubt must be given to the media defendant on a motion for summary judgment. *Lins, supra,* pp 425-426.

some decisions, we do not believe that a mere allegation that defendant knew a statement was untrue, or that it was made with reckless disregard for the truth, is enough to take a case to the jury.[23]

In *Lins, supra,* we said:

"As previously indicated, actual malice is established by proof that the defamatory statement is made with knowledge that it was false or with reckless disregard of whether it was false or not. It is not enough to merely allege that actual malice exists. The facts upon which plaintiff bases his conclusion of actual malice must be examined." (Footnote omitted.)[24]

In this case, defendants moved for summary judgment on the basis of GCR 1963, 117.2(3), now MCR 2.116(C)(10), that no material factual issue remained. Here, plaintiffs must offer more than a mere allegation of knowledge.[25] Summary judgment is a part of a defendant's protection in a libel case.[26] Plaintiffs must plead facts that indicate that defendants acted with actual malice.

Plaintiffs' allegations in this case fail to meet that requirement.

We conclude that the trial court correctly granted summary judgment to defendants because plaintiffs did not plead facts to indicate that defendants acted with actual malice.

Affirmed.

---

[23] But, see *Peisner, supra,* p 166; *Grebner, supra,* pp 334-335.

[24] *Lins, supra,* p 435.

[25] *Swenson-Davis, supra,* p 637; *Dienes, supra,* p 281; *Hayes v Booth Newspapers, Inc,* 97 Mich App 758, 775; 295 NW2d 858 (1980).

[26] *Dienes, supra,* p 283.