**W.A.R.M.; and David Dovala, Sheriff of Natrona County, Wyoming, in his official capacity, Appellants (Plaintiffs),**

v.

**Frank BONDS, as Risk Manager and Administrator of the Procurement Service Division of the Department of Administration and Information, Appellee (Defendant).**

No. 93–33.

Supreme Court of Wyoming.

Jan. 7, 1994.

Judith A. Studer, argued of Schwartz, Bon, Walker & Studer, Casper, for appellant.

John W. Renneisen, Deputy Atty. Gen. and Nicholas Vassallo, Asst. Atty. Gen., argued for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

CARDINE, Justice.

Sheriff Dovala brought this action in the Natrona County District Court seeking declaratory judgment holding that the Wyoming State Self–Insurance Act, W.S. 1–41–101 to 111 (1988 & Cum.Supp.1993), covered the county sheriff being sued in his official capacity under 42 U.S.C. § 1983 (§ 1983). It comes to us as a certified question of law under W.R.A.P. 11.

We answer the certified question in the negative.

The certified question is:

Is a sheriff covered by the State Self–Insurance Act (§ 1–41–101, *et seq.*) for claims brought pursuant to 42 USC § 1983 against a sheriff in his official capacity in a pending lawsuit?

## *FACTS*

The parties stipulated to the following facts:

1. Thomas Lauck, David Rhodes, Kurlee Roberts, individually and on behalf of other persons similarly situated, sued the Board of County Commissioners of Natrona County, Wyoming, and David Dovala, Sheriff of Natrona County, in his individual and official capacities, and John Doe, U.S. Marshall, *et al.* The action [was] filed in the United States District Court for the District of Wyoming. * * *.

2. As part of the above-described action, *Lauck, et al.* assert claims pursuant to 42 USC § 1983 arising out of the care and treatment of inmates at the Natrona County Detention Center.

3. Sheriff David Dovala was elected as Sheriff of Natrona County in November of 1990 and took office in January of 1991. Pursuant to § 18–6–302 (W.S.1977), the county sheriff shall keep the jail and be responsible for the manner in which it is kept. A sheriff duly elected in the state of Wyoming is a "peace officer" under the provisions of § 7–2–101 (W.S.1977).

4. Sheriff David Dovala was served with a copy of a Summons and Complaint in *Lauck, et al.*

5. Eric Easton, County Attorney for Natrona County, forwarded a copy of the above-referenced suit to Monty Lauer, Risk Supervisor, Department of Administration and Information, Division of Procurement Services, pursuant to letter of October 9, 1992.

6. Frank Bonds, as Risk Manager and Administrator of the Procurement Service Division of the Department of Administration and Information for the State of Wyoming, is charged by statute with providing legal services for the defense of claims covered by the State Self Insurance Act and to pay out of the self-insurance account those claims that have been settled or reduced to final judgment as provided in the State Self Insurance Act. Monty Lauer, Risk Supervisor, works directly under Frank Bonds and is charged with the administration of claims under the State Self Insurance Act.

7. Monty Lauer, Risk Supervisor, responded to the County Attorney pursuant to letter dated October 12, 1992. His letter acknowledged receipt of the above-referenced suit. The letter stated: "Sheriff Dovala is named both in his 'individual and official capacity.' The State will defend Sheriff Dovala only in his 'individual capacity'."

8. Monty Lauer, as Risk Supervisor, retained the services of [a law firm] to

represent David Dovala, Sheriff of Natrona County, in his individual capacity. [That firm] filed an Answer on behalf of the sheriff in his individual capacity dated October 22, 1992.

9. The Wyoming Association of Risk Managers ("W.A.R.M.") hired [another law firm] to represent the interests of the Board of County Commissioners of Natrona County, Wyoming. An Answer was filed on the Commissioners' behalf dated October 26, 1992.

10. Thereafter, W.A.R.M. retained the services of [a third law firm] to represent Sheriff David Dovala in his official capacity only.

11. The rights, duties, and obligations of Frank Bonds, as Risk Manager and Administrator of the Procurement Service Division of the Department of Administration and Information, and those under him, are set forth in § 1–41–101, et seq.

12. The rights, duties, and obligations of W.A.R.M. towards its participating public entities are set forth in the Wyoming Association of Risk Management Joint Powers Agreement and Memorandum of Liability Coverage. [record references omitted]

## I. DISCUSSION

Although the parties have framed the certified question based on the assumption that Sheriff Dovala and similarly situated peace officers are covered by the Wyoming State Self–Insurance Act when sued under § 1983 in their individual capacity, discussions at oral argument and further review of the act have raised serious questions concerning the correctness of that assumption. Therefore, before analyzing the official capacity question, we first address whether the sheriff is covered by the act in his individual capacity.

### A. Self–Insurance Act Coverage

The relevant portions of the Wyoming State Self–Insurance Act provide as follows:

(c) Expenditures shall be made out of the self-insurance account for the following claims which have been settled or reduced to final judgment:

\* \* \* \* \* \*

(iv) *Claims against a peace officer employed by* the University of Wyoming or *a local government arising under 42 U.S.C. 1983* or other federal statutes \* \* \*:

\* \* \* \* \* \*

(B) *The conditions and limitations of subsection (e) of this section apply to all claims under this paragraph.*

\* \* \* \* \* \*

(e) The state *shall defend claims against its public employees,* or a state judicial officer exercising the authority vested in him, *arising under 42 U.S.C. 1983* or other federal statutes, subject to the following conditions:

(i) *The state shall defend and,* to the extent provided by paragraph (v) of this subsection, *indemnify any of its public employees* against any claim or demand, whether groundless or otherwise, arising out of an alleged act or omission occurring in the scope of duty;

\* \* \* \* \* \*

(v) Unless the act or omission upon which a claim is based is determined by the court or jury to be within the public employee's scope of duty, no public funds shall be expended in payment of the final judgment against the public employee[.]

Wyoming Statute 1–41–103 (Cum.Supp.1993) (emphasis added). The act defines "public employees" as

[v] any officer, employee or servant of the state, provided the term:

(A) Includes elected or appointed officials, *peace officers* and persons *acting on behalf or in service of the state in any official capacity,* whether with or without compensation;

(B) *Does not include:*

\* \* \* \* \* \*

(III) *Any local government employees or officials including county and prosecuting attorneys.*

Wyoming Statute 1–41–102 (Cum.Supp.1993) (emphasis added). The act incorporates the definition of "peace officer" found at W.S. 7–2–101 (Cum.Supp.1993), which provides in part:

> (iv) "Peace officer" means:
>
> (A) *Any duly authorized sheriff, under sheriff or deputy sheriff* who has qualified pursuant to W.S. 9–1–701 through 9–1–707[.]

In addition, the act provides:

> (a) Except as otherwise provided in subsection (b) of this section, *the risk manager shall:*
>
> \*    \*    \*    \*    \*    \*
>
> (iv) *Provide legal services for the defense of claims covered by this act* through the attorney general or through private attorneys approved by the attorney general[.]

Wyoming Statute 1–41–105 (1988) (emphasis added).

■ When construing statutes, we first review the language of the statute to determine whether it is ambiguous. If we find it to be unambiguous, we apply its plain meaning and do not consult the numerous rules of statutory construction. If, however, we find the statute ambiguous, that is "its meaning is uncertain, doubtful, or if a single term can fairly be said to mean different things," then we may resort to the rules of statutory construction. *Moncrief v. Wyoming State Bd. of Equalization,* 856 P.2d 440, 443 (Wyo.1993) (quoting *Amoco Production Co. v. State,* 751 P.2d 379, 381 (Wyo.1988)).

■ We find that the Wyoming State Self–Insurance Act is ambiguous with respect to who and what is covered under the act; stated another way, the question presented is who are the insured. Unlike most private insurance policies where the terms of the policy specifically identify those individuals or entities insured by the policy, the State Self–Insurance Act fails to directly identify the insured parties. Subsections (a) and (b) of W.S. 1–41–103, designate how the self insurance fund is created and maintained. Subsection (c) is concerned with payment of claims "which have been settled or reduced to final judgment," including claims made "against a peace officer employed by * * * a local government arising under 42 U.S.C. 1983." Subsection (e) designates those claims which the State has a duty to defend and to indemnify.

■ The ambiguity arises because of inconsistencies between subsections (c) and (e). Subsection (e) requires that the State provide a defense to and indemnify claims brought against state "public employees." "Public employees" are defined as "peace officers * * * acting on behalf or in service of the state." "Public employee" does not include "any local government * * * official." Thus, the Natrona County Sheriff is not a public employee for whom the State must provide a defense.

If, however, a claim based on § 1983, brought against a local government "peace officer," is reduced to final judgment or has been settled, subsection (c) requires payment by the State out of the self-insurance account. The term peace officer means "any duly authorized sheriff." W.S. 7–2–101. The Natrona County Sheriff is a local government peace officer.

The statute, therefore, in one breath provides that a § 1983 judgment or agreed settlement against a local government "peace officer" be paid by the State out of the self-insurance fund; but, in the next breath, provides that there is no duty to defend or indemnify § 1983 claims against "local government officials." Adding further confusion to the scenario, W.S. 1–41–105 requires the risk manager to "provide legal services for the defense of claims covered by" the act.

When construing an ambiguous statute, we seek to discover the intent of the legislature by applying rules of statutory construction. *Story v. State,* 755 P.2d 228, 231 (Wyo.1988), *cert. denied* 498 U.S. 836, 111 S.Ct. 106, 112 L.Ed.2d 76 (1990). In our search for legislative intent, we

> look to the mischief the statute was intended to cure, the historical setting surrounding its enactment, the public policy of the state, the conclusions of law, and other prior and contemporaneous facts and circumstances, making use of the accepted

rules of construction to ascertain a legislative intent that is reasonable and consistent.

*State ex rel. Motor Vehicle Div. v. Holtz,* 674 P.2d 732, 736 (Wyo.1983).

Although legislative history and legislative intent are rarely discoverable in Wyoming, the State Self–Insurance Act here does provide some insight:

> The legislature recognizes that certain liability insurance policies of the state of Wyoming have been cancelled, that no responsive bids have been received and that there exists a need to develop a method to handle claims brought under the Wyoming Governmental Claims Act and arising under federal law. *The legislature declares that the appropriate remedy is to create an account for self-insurance of the state* and to provide for a loss prevention program.

W.S. 1–41–101 (1988) (emphasis added). That statement of intent suggests that the act was intended to provide coverage for the State, not local governments and their employees.

Legislative intent can also be gleaned from the preamble, included when the State Self–Insurance Act was enacted and published as a session law in 1986, which explained the act as:

> creating the self-insurance account within the earmarked revenue fund to be administered for the payment of certain *claims against the state and its public employees and peace officers* brought under the Wyoming Governmental Claims Act or arising under federal law * * *.

1986 Wyo.Sess.Laws ch. 74 (emphasis added). The language of this preamble suggests that the act was intended to insure those claims brought against the State, the state's public employees, and peace officers. There is no mention of local government employees. Whether the State Self–Insurance Act was intended to cover only "state peace officers"—*e.g.,* highway patrolmen—or "all peace officers"—*e.g.,* county sheriffs—is, however, unclear in the preamble because of the placement of the term "its." If the term "its" modifies both "public employees" and "peace officers," then the act covers only "state peace officers"; but if "its" modifies "public employees" only, then the act likely was intended to cover "all peace officers."

Additional insight into the legislature's intent when enacting the State Self–Insurance Act appears in other legislation passed at the same time and in conjunction with the State Self–Insurance Act. The 1986 Legislature, in addition to enacting the "State Self–Insurance Act," also passed the "Local Government Insurance Program." 1986 Wyo.Sess. Laws ch. 81 and W.S. 1–42–101 through 1–42–112. Just as the legislature had declared that the "State Self–Insurance Act" was intended to cover the state, they similarly declared that the "Local Government Insurance Program" was intended to insure local governments. *See* W.S. 1–42–101 (1988). However, "peace officers" were and are specifically excluded from coverage under the "Local Government Insurance Program." *See* W.S. 1–42–103(c)(i) & (e)(i) (Cum.Supp.1993) and 1986 Wyo.Sess.Laws ch. 81 § 1. The fact that "peace officers" were specifically excluded from the "Local Government Insurance Program" and were specifically mentioned in the ambiguous coverage sections of the "State Self–Insurance Act" demonstrates that the legislature intended the "State Self–Insurance Act" to cover "all peace officers." *See* W.S. 1–41–103(c)(iv) (Cum.Supp.1993) and 1986 Wyo.Sess.Laws ch. 74 § 1.

Additional support for this construction can be found in W.S. 9–2–1017 (1989) which was amended when the "State Self–Insurance Act" was enacted in 1986. Wyoming Statute 9–2–1017 was amended to provide:

> (a) The state of Wyoming through the department shall purchase a comprehensive professional liability policy providing coverage for *all peace officers* if:
>
> > (i) Coverage is available at a reasonable cost; and
> >
> > (ii) It is economically more feasible to provide coverage through the purchase of insurance than through *self-insurance as provided by W.S. 1–41–101 through 1–41–111.*

*See* 1986 Wyo.Sess.Laws ch. 74 § 2. The language of that statute evidences an intent that W.S. 1–41–101 through 1–41–111, the

"State Self Insurance Act," covered all peace officers, not just "state peace officers."

Resolving the ambiguity under the act, the legislative history suggests that the State Self–Insurance Act was intended to cover § 1983 actions brought against all peace officers in their individual capacity, as defined at W.S. 7–2–101, including county sheriffs. Having determined the basic coverage question, we now turn to the certified question of coverage for official capacity suits.

### B. Official Capacity Actions

■ Appellant Sheriff Dovala argues that the plain language of the State Self–Insurance Act does not distinguish between official capacity and individual capacity § 1983 actions and, therefore, the act covers him whether the action is brought against him in his individual or in his official capacity. Appellee, the risk manager of the State Self–Insurance Act (risk manager), asserts that a § 1983 action against a governmental agent in his or her official capacity is no different than suing the governmental entity whom the governmental agent represents and since local governments, like Natrona County, are not covered by the State Self–Insurance Act, then the act does not cover the sheriff of Natrona County when sued in his official capacity.

The United States Supreme Court, in Kentucky v. Graham, explained that a § 1983 action against a governmental officer in his or her "official capacity" is to be treated as a suit against the government agency, who is the real party in interest. 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). That court reaffirmed the holding in Graham when it said, "the real party in interest in an official-capacity suit is the governmental entity and not the named official * * *." Hafer v. Melo, —— U.S. ——, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991). Therefore, based on the United States Supreme Court's construction of the federal legislation 42 U.S.C. § 1983, the suit against Sheriff Dovala in his "official capacity" should be treated as a suit against the governmental entity for which he is an agent.

■ Sheriff Dovala counters this conclusion by asserting that the plain language of the State Self–Insurance Act does not exclude coverage of "official capacity" claims and that federal case law should not control the interpretation of a state statute. The section of the act which grants coverage of peace officers sued under § 1983, 1–41–103(c)(iv), states:

. Expenditures shall be made out of the self-insurance account for the following claims which have been settled or reduced to final judgment:

.      *       *       *       *       *       *

(iv) Claims against a peace officer employed by * * * a local government *arising under 42 U.S.C. 1983* * * *[.].

We agree that federal case law has no binding effect on the construction of a Wyoming statute. We are, however, bound by federal case law in determining what types of claims may "arise under 42 U.S.C. 1983." As was previously noted, a claim which is brought against a peace officer in his or her "official capacity" is actually against a governmental entity not a "claim against a peace officer." Graham, 473 U.S. at 165, 105 S.Ct. at 3105, Hafer, —— U.S. ——, 112 S.Ct. at 361. Therefore, the only claim against a peace officer which can "arise under 42 U.S.C. 1983" is a suit against the peace officer in his or her "individual or personal capacity." Since a § 1983 suit against a peace officer in his or her "official capacity" is a claim against his or her county, not a claim against the peace officer, it is not covered by the State Self–Insurance Act.

It is undisputed that the "State Self–Insurance Act" does not provide coverage to local governments, including county governments. Natrona County is the entity which Sheriff Dovala represents. Sheriff Dovala is a county sheriff, and a county sheriff is a "county officer." W.S. 18–3–102 (Cum.Supp.1993). A "county officer" has his or her office in the county and is paid by the county. W.S. 18–3–103 and –107 (Cum.Supp.1993). The county sheriff manages the county jail for the county commissioners, but the county commissioners control the construction, necessary repairs and the settling of expenses for the jail. W.S. 18–6–201, 18–6–302, 18–6–303 (1977 & Cum.Supp.1993). Therefore, a

§ 1983 action against Sheriff Dovala in his "official capacity" is really a § 1983 action against Natrona County, which is not covered by the State Self–Insurance Act.

## CONCLUSION

A § 1983 claim against a county sheriff in his or her official capacity is not covered by the State Self–Insurance Act because a § 1983 official capacity action against a sheriff is really a § 1983 claim against the county and therefore is not a claim "against a peace officer employed by * * * a local government arising under 42 U.S.C. 1983," as is required by the act.

The answer to the certified question is, no.