**Larry Dean CASTEEL, Appellant (Plaintiff),**

v.

**The NEWS–RECORD, INC., a Wyoming corporation, Appellee (Defendant).**

No. 93–197.

Supreme Court of Wyoming.

May 26, 1994.

Robert J. O'Neil, Legal Clinic of Robert J. O'Neil, Gillette, for appellant.

Charles G. Kepler and Chris Edwards, Simpson, Kepler & Edwards, Cody, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

GOLDEN, Justice.

Appellant, Larry Dean Casteel, whose defamation action against appellee, the Gillette News–Record, Inc., was dispatched by the district court's entry of summary judgment, appeals that summary judgment claiming the existence of at least one genuine issue of material fact, as well as a procedural error in the scheduling of the summary judgment hearing.

We affirm.

## ISSUES

Appellant presents the following issues for our review:

I. Was the Motion For Summary Judgment of The Defendant, The News–Record, Inc. against the Plaintiff, Larry Dean Casteel timely heard?

II. Did Wyoming Statute § 1–29–105 apply to the facts of this case?

III. Did a material issue of fact exist so as to preclude the Court from granting the Motion for Summary Judgment of the Defendant, The News–Record, Inc. against the Plaintiff, Larry Dean Casteel?

Appellee presents the issues as:

1. Was the Motion for Summary Judgment timely heard?

2. Was the article that was printed in the April 3, 1992 edition of *The News–Record* substantially true, and thus a complete defense to any claim of libel?

3. Was the article that was printed in the April 3, 1992 edition of *The News–Record* a fair and impartial report, and thus privileged according to the requirements of Wyoming Statutes Section 1–29–105, which operates as a complete defense to any claim of libel?

## FACTS

On January 22, 1992, the state filed a criminal complaint against appellant charging him with one count each of first and second-degree sexual assault and one count of taking immodest, immoral or indecent liberties with a child. On April 1, 1992, pursuant to a plea agreement, appellant entered a plea of *nolo contendere* on a deferred prosecution to the charge of taking immodest, immoral or indecent liberties with a child.

On April 3, 1992, appellee ran the following story in the "Courts" section of its paper, reporting the April 1, 1992 hearing:

Larry Casteel, 48, pleaded no contest during his arraignment in District Court to a felony charge of indecent liberties. In exchange for his plea, felony charges of first and second degree sexual assault were dropped. Casteel admitted to committing indecent liberties from 1985 to 1991 with a girl who is now 16 years old. According to the plea agreement, prosecutors will defer prosecution of the indecent liberties charge and Casteel will undergo

counseling and be placed on unsupervised probation for up to one year.

Following publication of the story, appellant's counsel contacted appellee concerning the inaccuracy of the portion of the story reporting appellant had "admitted" to the charges against him. On April 14, 1992, appellee printed a clarification, in the same size type as used in the original article, which read:

A court item in the April 3 News–Record incorrectly stated that Larry Casteel, 48, admitted to committing indecent liberties with a now, 16 year old girl. In fact, Casteel pleaded "no contest" to the charge and denied any wrongdoing whatsoever. Casteel agreed to seek counseling and was placed on unsupervised probation for one year.

On April 2, 1993, appellant brought the instant action against appellee for defamation arising from the April 3, 1992 news account. On April 26, 1993, the district court issued a *Case Management Order.* Paragraph four of the order provided:

At least 20 days before the pre-trial conference ... all Rule 54(b) and 56 motions must be filed and scheduled so they may be heard at least 5 days before the conference[.] Motions not timely filed and heard are waived.

On May 19, 1993, the district court issued an order scheduling the pre-trial conference for July 28, 1993. On July 6, 1993, appellee filed a motion for summary judgment, to which appellant filed a traverse on July 26, 1993. The district court scheduled the summary judgment hearing for July 28, 1993, just one hour before the pretrial conference. The district court's order granting appellee's motion for summary judgment was entered August 17, 1993, and this appeal followed.

## DISCUSSION

### 1. Timeliness of Summary Judgment Hearing

Appellant first contends that the district court's entry of summary judgment should be reversed because the summary judgment hearing was not held within the time set

forth by the *Case Management Order.* Appellee responds first that appellant has waived any objection to the timing of the summary judgment hearing by his failure to object below. Appellee further asserts that adherence to the *Case Management Order* is within the trial court's discretion, no abuse of that discretion has been demonstrated, and appellant has failed to prove prejudice resulting from the timing of the summary judgment hearing.

A case management order is a type of pretrial order. The trial court has discretion in determining the requirements of adherence to pretrial orders, and its rulings will not be overturned absent an abuse of that discretion. *State v. Dieringer,* 708 P.2d 1, 8 (Wyo.1985); *Ford Motor Co. v. Kuhbacher,* 518 P.2d 1255, 1260 (Wyo.1974). Additionally, this court cannot reverse except for error which is shown to be prejudicial. *Cervelli v. Graves,* 661 P.2d 1032, 1036 (Wyo.1983); *Caillier v. City of Newcastle,* 423 P.2d 653, 656 (Wyo.1967).

■ We need not, however, reach these questions of whether the trial court abused its discretion, and if so, whether the error was prejudicial, because appellant failed to object below to the timing of the summary judgment hearing. "An issue not called to the attention of the trial court will not be considered on appeal." *Davenport v. Epperly,* 744 P.2d 1110, 1112 (Wyo.1987) (citing *ABC Builders, Inc. v. Phillips,* 632 P.2d 925, 942 (Wyo.1981)). Appellant filed a traverse to appellee's motion for summary judgment, but never objected to the timing of the summary judgment hearing. Thus, this court will not now consider the issue.

## 2. Propriety of Summary Judgment

"Summary judgment is appropriate when no genuine issues of material fact exist, and the prevailing party is entitled to judgment as a matter of law." *Lynch v. Norton Construction, Inc.,* 861 P.2d 1095, 1097 (Wyo. 1993) (citing *Brown v. Avery,* 850 P.2d 612, 614–15 (Wyo.1993)). "When reviewing the propriety of a grant of summary judgment, we review the record in the light most favorable to the party opposing the motion, giving that party all favorable inferences that can be drawn from the facts." *Lynch,* 861 P.2d at 1097 (citing *Miller v. Campbell County,* 854 P.2d 71, 75 (Wyo.1993)).

Appellant contends that the district court erred when it granted appellee's motion for summary judgment because it improperly applied Wyo.Stat. § 1–29–105 (1988) to the facts of this case. Appellant argues that the provision does not apply because the article at issue was not a "fair" report, or at the very least a question of fact exists whether the article was "fair."

Wyo.Stat. § 1–29–105 provides:

The publication of a fair and impartial report of any indictment, the issuing of any warrant, the arrest of any person accused of crime, or the filing of any pleading or other document in any criminal or civil cause in any court, or of the contents thereof, is privileged unless it is proved that the same was published maliciously or that the defendant has refused or neglected to publish in the same manner in which the publication complained of appeared a reasonable written explanation or contradiction thereof by the plaintiff, or that the publisher has refused upon plaintiff's request to publish the subsequent determination of the suit or action.

This statute is an example of a conditional privilege under laws of defamation. A privilege in this context is "an exemption from liability for the speaking or publishing of defamatory words concerning another, based on the fact that the statement was made in the performance of a political, judicial, social, or personal duty." BLACK'S LAW DICTIONARY 1077 (5th ed. 1979). An absolute privilege protects the speaker or publisher without reference to his motives or the falsity of the statement. *Id.* A conditional privilege is a qualified privilege and typically protects the speaker or publisher unless actual malice and knowledge of the falsity of the statement is shown. *Id. See also Agriss v. Roadway Express, Inc.,* 334 Pa.Super. 295, 483 A.2d 456, 463 (1984) ("Liability for publication of *defamatory* matter may be defeated by a privilege to publish the defamation.") (emphasis added); *Kurz v. The Evening News Ass'n,* 144 Mich.App. 205, 375 N.W.2d 391,

394 (1985) ("Where * * * the privilege applies, even misstatements of fact are not actionable in a libel suit unless they are made with malice.")

"The defense of privilege rests upon considerations of public policy." *Kurz,* 375 N.W.2d at 394. Privileges were created at common law where it was determined that the public good and interests of society would be better served by permitting the publication of statements than by the vindication of a plaintiff's reputational interests. 53 C.J.S. *Libel and Slander* §§ 56–57 (1987).

■ The initial determination of whether a publication is privileged is a question of law for the court. *Kurz,* 375 N.W.2d at 394; *Lence v. Hagadone Inv. Co.,* 258 Mont. 433, 853 P.2d 1230, 1237 (1993); *Agriss,* 483 A.2d at 463; *Crump v. Beckley Newspapers, Inc.,* 173 W.Va. 699, 320 S.E.2d 70, 81 (1983). Here the legislature, through its enactment of WYO.STAT. § 1–29–105, has defined when the privilege in question applies and how that privilege may be lost.

■ Our initial step in reaching a correct interpretation of WYO.STAT. § 1–29–105 and determining when it applies is "an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection." *Houghton v. Franscell,* 870 P.2d 1050, 1053 (Wyo.1994) (quoting *Parker Land & Cattle Co. v. Wyoming Game & Fish Comm'n,* 845 P.2d 1040, 1042 (Wyo.1993)). When interpreting a statute, we must determine whether the language of the statute is plain and unambiguous. *Houghton,* at 1053. A statute is plain and unambiguous if its wording is such that "reasonable persons are able to agree as to its meaning with consistence and predictability." *Houghton,* at 1053; *Parker,* 845 P.2d at 1043. If the language of the statute is plain and unambiguous, we apply its plain meaning without reference to the numerous rules of statutory construction. *Houghton,* at 1053; *W.A.R.M. v. Bonds,* 866 P.2d 1291, 1294 (Wyo.1994).

The language of WYO.STAT. § 1–29–105 provides that a publication will be privileged if it is "fair and impartial," unless it was published "maliciously" or the publisher "has refused or neglected to publish * * * a reasonable written explanation or contradiction thereof by the plaintiff." The characteristic challenged in this instance is the report's "fairness." Appellant contends that because the information reported was inaccurate and untrue, the article could not be fair, and the privilege, therefore, does not apply. We disagree.

As noted above, this court will assign to the words used in a statute their ordinary and obvious meaning. BLACK'S LAW DICTIONARY defines *fair* as:

Having the qualities of impartiality and honesty; free from prejudice, favoritism, and self-interest.

BLACK'S LAW DICTIONARY 535 (5th ed. 1979). WEBSTER'S DICTIONARY clarifies the definition of *fair* by comparing it with similar terms. It notes:

FAIR, the most general of the terms, implies a disposition in a person or group to achieve a fitting and right balance of claims or considerations that is free from undue favoritism even to oneself, or implies a quality or result in an action befitting such a disposition.

\* \* \* \* \* \*

JUST stresses, more than FAIR, a disposition to conform with or conformity with the standard of· what is right, true, or lawful, despite strong, esp. personal, influences tending to subvert that conformity * * * (a *just* statement of the facts) * * *.

\* \* \* \* \* \*

IMPARTIAL stresses an absence of favor or prejudice in judgment.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 815 (1971).

The comparison of these terms highlights the fact that the term *fair* does not necessarily contain connotations of truth. The term *true* is defined as:

Conformable to fact; correct; exact; actual; genuine; honest.

BLACK'S LAW DICTIONARY 1351 (5th ed. 1979).

■ We conclude that the ordinary and obvious meaning of *fair* does not require that the report be true or accurate. If the legis-

lature had intended such a result, it could have used those precise terms. What is required for the privilege to apply is that the report have qualities of impartiality and honesty, and be free from prejudice, favoritism and self-interest. These parameters on the application of the privilege fit with the primary purpose to be served by a privilege. That is, it provides immunity from liability where liability might otherwise be imposed. If the privilege only applied if the information reported was substantially true, it would not serve its primary purpose. Proof that the statement is substantially true is all that is generally required to defend against a charge of defamation. *Dworkin v. L.F.P., Inc.*, 839 P.2d 903, 917 (Wyo.1992); *Tschirgi v. Lander Wyoming State Journal*, 706 P.2d 1116, 1120 (Wyo.1985). Thus, if the defendant could demonstrate the statement was substantially true, the privilege would be unnecessary.

■ The affidavits of the reporter who authored the article and the editor of the newspaper both attested to the fairness (as defined above) and impartiality of the article. Appellant did not refute or even question the facts attested to in the two affidavits. We thus conclude the privilege applies in this instance. Since it is undisputed that appellee printed a retraction and explanation upon appellant's request, the only remaining question is whether the inaccurate information was printed maliciously.

A finding of malice will defeat the privilege. When applying a conditional privilege, absence of malice is presumed, and the plaintiff must prove malice on the part of the defendant. *Williams v. Blount*, 741 P.2d 595, 596 (Wyo.1987). With malice means the statement was made with knowledge that it was false or with reckless disregard of whether it was false or not. *MacGuire v. Harriscope Broadcasting Co.*, 612 P.2d 830, 832 (Wyo.1980); *New York Times v. Sullivan*, 376 U.S. 254, 279, 84 S.Ct. 710, 726, 11 L.Ed.2d 686, 706, 95 A.L.R.2d 1412 (1964).

In his affidavit, the reporter who authored the article stated that his mistake was inadvertent and without malice. This portion of the affidavit was also uncontroverted by appellant, by either the original complaint or a responding affidavit. We thus conclude no genuine issue of fact exists concerning whether the statement was published with maliciousness, and the privilege applies.

Appellant raises an alternative argument that WYO.STAT. § 1–29–105 does not apply because the information reported in this instance was learned not from the contents of a document filed with a court, but rather from an oral proceeding. We do not address the question whether the privilege applies only when the information is obtained from written documents filed with the court for two reasons. First, the question is not properly before us because, in both the affidavit of the reporter who authored the article and in appellant's own traverse to the motion for summary judgment, it is stated that appellee obtained its information from the written plea agreement. Additionally, appellant did not raise this issue before the trial court, and, as we noted earlier, we will not consider on appeal an issue not called to the attention of the trial court.

### CONCLUSION

Appellant waived his objection to the timeliness of the summary judgment hearing by failing to raise the issue before the district court, and that court properly determined the statements published by appellee were privileged under WYO.STAT. § 1–29–105.

The decision of the district court is affirmed.

CARDINE, Justice, specially concurring.

We should not approve the district court issuing a case management order and then casually ignoring the same by failure to enforce it as to all parties according to its provisions. Without enforcement, the order is meaningless and can either be a trap or an advantage to a party. It is bad precedent for us to suggest that the court can ignore its own order. However, failure to object to the timeliness of the hearing is a waiver and dispositive, and for that reason I concur in the disposition of this issue and concur otherwise in the opinion of the court.