# IN THE SUPREME COURT, STATE OF WYOMING

# 2021 WY 100

### APRIL TERM, A.D. 2021

### September 16, 2021

ANTOINE DOMONE MILLER,

Appellant
(Defendant),

v.

S-21-0008

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
The Honorable Kerri M. Johnson, Judge

*Representing Appellant:*

Office of the State Public Defender: Diane Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Francis H. McVay, Senior Assistant Appellate Counsel. Argument by Mr. McVay.

*Representing Appellee:*

Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Catherine M. Mercer, Assistant Attorney General. Argument by Ms. Mercer.

*Before FOX, C.J., and DAVIS\*, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

*\* Chief Justice at time of oral argument.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.

**KAUTZ, Justice.**

[¶1]     Antoine Domone Miller was convicted by a jury of one count of felony strangulation of a household member and one count of misdemeanor domestic battery. Mr. Miller claims the district court violated his right to due process when it refused to allow him to plead guilty to domestic battery. The State argues there was no due process violation and the district court did not abuse its discretion by refusing to accept Mr. Miller's guilty plea. We affirm.

## ISSUES

[¶2]     The issues on appeal are:

1.       Did the district court violate Mr. Miller's due process rights by refusing to allow him to plead guilty to misdemeanor domestic battery?

2.       Did the district court abuse its discretion by refusing to accept Mr. Miller's guilty plea?

## FACTS

[¶3]     Mr. Miller, Patricia Martinez, and her twelve-year-old daughter lived together in Casper, Wyoming. On January 30, 2020, Mr. Miller woke up while Ms. Martinez was getting ready for work and looked at her in an "irritated" manner. She asked, "What?" He grabbed her by the throat, pushed her head up against a door, and said, "Don't you ever say 'what' to me, you b***h." Mr. Miller squeezed her throat, which hindered her breathing and made her dizzy. When he let go of her, Ms. Martinez fell against the door and grabbed a nearby counter, gasping for air. A short while later, Mr. Miller drove her to work.

[¶4]     At the end of her shift, Mr. Miller picked Ms. Martinez up from work and drove to her daughter's school. They argued while waiting for her daughter to come out of the school, and Ms. Martinez told him she wanted to end their relationship. Mr. Miller said, "I'll show you, b***h, if you don't want to be with me." He removed a pen from the vehicle's console and stabbed her in the leg with it. Ms. Martinez started crying and put her hand on the wound to control the bleeding. After the daughter got into the vehicle, Mr. Miller drove to Ms. Martinez's sister's apartment. When her sister asked her what had happened to her leg, Ms. Martinez did not answer.

[¶5]     Mr. Miller left the apartment, and Ms. Martinez told her sister and daughter about the stabbing and called 911. Upon the advice of emergency personnel, Ms. Martinez went to the emergency room (ER) to have the stab wound treated. While at the ER, Ms. Martinez described the stabbing incident to law enforcement and reported Mr. Miller had choked her

1

that morning. She also said he had slapped her. Law enforcement took photos of her leg injury and discolorations and bruising on her neck.

[¶6]    The State charged Mr. Miller with one count of felony strangulation of a household member and two counts of misdemeanor domestic battery for slapping and stabbing Ms. Martinez. Later, the State amended the information to add an enhancement to the strangulation charge, asserting Mr. Miller was a habitual criminal because he had previously been convicted of three felonies arising out of separate occurrences. *See* Wyo. Stat. Ann. § 6-10-201(a) and (b)(ii) (LexisNexis 2021). Mr. Miller was arraigned on March 17, 2020, and pleaded not guilty to the charges.

[¶7]    The district court entered a criminal case management order the day of the arraignment. *See* Wyoming Rule of Criminal Procedure (W.R.Cr.P.) 12(d) ("Unless otherwise provided by local rule, the court may, at the time of the arraignment or as soon thereafter as practicable, set a time for the making of pretrial motions or requests and, if required, a later date of hearing."). Relevant here, the court ordered the State to "provide notice of its intent to use [Wyoming Rule of Evidence (W.R.E.)] 404(b) evidence no later than 45 days from the date of arraignment." The criminal case management order also stated: "In the event the Defendant changes his . . . plea to guilty, the Defendant and counsel for both parties shall use their best efforts to see that the Court is advised of the change of plea **not less than three days** before the scheduled trial date." (Emphasis in original). Trial was set to commence on August 24, 2020.

[¶8]    On July 13, 2020, Mr. Miller requested a hearing to change his plea on the two misdemeanor domestic battery counts, leaving only the strangulation count for trial. The district court set the change of plea hearing for August 11, 2020. At the hearing, defense counsel stated Mr. Miller wanted to plead guilty to the two domestic battery misdemeanors but there was no plea agreement with the State. The district court asked: "Don't you think that changing a plea to [the domestic battery counts] causes significant 404(b) issues if the [c]ourt allows you to do that?" Defense counsel acknowledged the change of plea would "cause some 404(b) issues" but stated he was not going to challenge the State's late notice of proposed 404(b) evidence. Although he intended to object to introduction of photos relevant to the battery counts, he realized the incidents leading to all three charges were "probably 404(b) to each other" and the stabbing count would have "to be brought up because that is the reason that officers were contacted in the first place[.]" At the conclusion of the hearing, the court denied Mr. Miller's request to change his pleas on the domestic battery counts because it would require continuing the trial on the strangulation count to determine the admissibility of the battery evidence.

[¶9]    The State subsequently dismissed the domestic battery count involving the slapping. After a trial, the jury found Mr. Miller guilty of strangling Ms. Martinez and domestic battery for stabbing her. It also found he was a habitual criminal with three prior felony convictions. *See* § 6-10-201(a), (b)(ii). Because he was a habitual criminal, the district

2

court sentenced Mr. Miller to life in prison for the strangulation. *See id.* It sentenced him to a concurrent term of 180 days for the battery. Mr. Miller appealed.

## DISCUSSION

### A. *Due Process*

[¶10]  Mr. Miller claims the district court violated his right to due process when it refused to allow him to plead guilty to the domestic battery charges. We review *de novo* the question of whether Mr. Miller's due process rights were violated. *Bush v. State,* 2008 WY 108, ¶ 72, 193 P.3d 203, 221 (Wyo. 2008) (citing *Humphrey v. State,* 2008 WY 67, ¶ 32, 185 P.3d 1236, 1246 (Wyo. 2008)). "'The party claiming an infringement of his right to due process has the burden of demonstrating both that he has a protected interest and that such interest has been affected in an impermissible way. The question is whether there has been a denial of fundamental fairness.'" *Hardman v. State,* 2020 WY 11, ¶ 35, 456 P.3d 1223, 1232 (Wyo. 2020) (quoting *KC v. State*, 2015 WY 73, ¶ 16, 351 P.3d 236, 241 (Wyo. 2015)) (other citations omitted). A violation of a constitutional right "is not automatically reversible; prejudice must be demonstrated before reversal will be required." *West v. State,* 2013 WY 128, ¶ 12, 311 P.3d 157, 160 (Wyo. 2013) (citing *State v. Spears,* 76 Wyo. 82, 98, 300 P.2d 551, 557 (Wyo. 1956)). "An error which violates a constitutional right is presumed prejudicial unless the reviewing court is convinced it was harmless beyond a reasonable doubt." *Id.  See also, Harlow v. State,* 2003 WY 47, ¶ 43, 70 P.3d 179, 194 (Wyo. 2003) (citing *Chapman v. California,* 386 U.S. 18, 23-24, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967)).

[¶11]  The United States Supreme Court has consistently ruled that a criminal defendant does not have an absolute right to plead guilty. *See Missouri v. Frye,* 566 U.S. 134, 148, 132 S.Ct. 1399, 1410, 182 L.Ed.2d 379 (2012) (a defendant does not have a federal right to have the judge accept a guilty plea); *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971) (there is no absolute right to have a guilty plea accepted by the court); *Lynch v. Overholser,* 369 U.S. 705, 719, 82 S.Ct. 1063, 1072, 8 L.Ed.2d 211 (1962) (same). *See also, United States v. Moran,* 452 F.3d 1167, 1171 (10th Cir. 2006) ("It is well-established that a criminal defendant does not have the absolute right to plead guilty." (citations and some quotation marks omitted)). Mr. Miller recognizes this precedent but claims the criminal case management order and W.R.Cr.P. 11 gave him a protected interest in pleading guilty.[1]

### 1. *Case Management Order*

---

[1] Without citation to authority or explanation, Mr. Miller changes the terminology for establishing a due process right from a "protected interest" to a "substantial right." We will continue to use the "protected interest" language from our precedent.

[¶12]   The criminal case management order instructed the parties to use their "best efforts" to notify the district court "not less than three days before the scheduled trial date" of a guilty plea. (Emphasis omitted).  Mr. Miller cites *State v. Dieringer,* 708 P.2d 1, 8 (Wyo. 1985), and *Ford Motor Co. v. Kuhbacher,* 518 P.2d 1255, 1260 (Wyo. 1974), as authority for his argument the case management order created a protected due process interest in pleading guilty.  In *Dieringer,* 708 P.2d at 8, and *Ford Motor,* 518 P.2d at 1260, we remarked on the authority of courts to enforce pretrial orders.  However, those cases do not stand for the proposition that a criminal defendant has a due process right to plead guilty simply because the case management order references the plea.  Notably, *Dieringer* and *Ford Motor* are civil cases, making their relevance to the issue of whether a case management order creates a due process right for a criminal defendant to plead guilty questionable.  Additionally, in each of those cases, we recognized the district court had discretion to decide whether and how to enforce the requirements of the order and its decision was reversible only if it abused its discretion.  *Dieringer,* 708 P.2d at 8; *Ford Motor,* 518 P.2d at 1260.  *See also, Bogard v. State,* 2019 WY 96, ¶ 81 n.19, 449 P.3d 315, 334 n.19 (Wyo. 2019) (indicating that, like in civil cases, the court in a criminal case has discretion in enforcing its scheduling orders).  There is no suggestion in *Dieringer* or *Ford Motor* that a case management order somehow creates a protected due process interest.

[¶13]   Mr. Miller also cites to Justice Cardine's special concurrence in *Casteel v. News-Record, Inc.,* 875 P.2d 21, 25 (Wyo. 1994), as supporting his view that a case management order can create interests protected by due process.  The district court in *Casteel* granted summary judgment in favor of the defendant newspaper in a defamation case.  *Id.* at 22.  Mr. Casteel claimed reversal was required because the court did not hold the summary judgment hearing within the time limits set out in the case management order.  *Id.* at 22-23.  Citing *Dieringer,* 708 P.2d at 8, and *Ford Motor,* 518 P.2d at 1260, the majority reiterated a district court has discretion in deciding whether to enforce the terms of a case management order and its decision would not be overturned absent an abuse of discretion.  *Id.* at 23.  However, the majority did not reach the question of whether the district court abused its discretion by not following the case management order because Mr. Casteel waived the issue by failing to object in the district court.  *Id.*

[¶14]   Justice Cardine's concurring opinion emphasized the importance of a district court following its case management order:

> We should not approve the district court issuing a case management order and then casually ignoring the same by failure to enforce it as to all parties according to its provisions. Without enforcement, the order is meaningless and can either be a trap or an advantage to a party. It is bad precedent for us to suggest that the court can ignore its own order. However, failure to object to the timeliness of the hearing is a waiver and

4

> dispositive, and for that reason I concur in the disposition of
> this issue and concur otherwise in the opinion of the court.

*Casteel,* 875 P.2d at 25 (Cardine, J., concurring). Justice Cardine did not state, or even suggest, a party has a due process right to enforcement of a case management order. At most, he indicated he may have found the district court abused its discretion by failing to follow its case management order had the issue not been waived. *Id.*

[¶15] Furthermore, the plain language of the case management order in this case does not indicate the district court intended to create an absolute right to plead guilty. *See generally, Tafoya v. Tafoya,* 2013 WY 121, ¶ 15, 309 P.3d 1236, 1240 (Wyo. 2013) (using the rules of contract construction, which start with the plain meaning of the language in the order, to determine the district court's intent when issuing it); *Glover v. Crayk,* 2005 WY 143, ¶ 10, 122 P.3d 955, 958 (Wyo. 2005) (same). Looking at the context of the change of plea provision in the case management order, it is clear the district court was simply creating a notification requirement to effectively manage its docket. *Tafoya,* ¶ 15, 309 P.3d at 1240 ("'[t]he language of [an order] is to be construed within the context in which it was written'" (quoting *Glover,* ¶ 10, 122 P.3d at 958)). Even the notification requirement was tempered because the district court instructed the parties to use their "best efforts" to give notice; it did not state a penalty for failing to do so. Mr. Miller has not established the criminal case management order granted him a protected due process interest in changing his plea to guilty.

### 2. *Rule 11*

[¶16] Mr. Miller also asserts he had a due process right to plead guilty under W.R.Cr.P. 11. Rule 11(a)(1) provides "[a] defendant may plead not guilty, not guilty by reason of mental illness or deficiency, guilty, or nolo contendere." Mr. Miller does not identify any caselaw declaring that Rule 11 grants a criminal defendant the absolute right to plead guilty, and we have found no such precedent. Federal Rule of Criminal Procedure (F.R.Cr.P.) 11(a)(1) also states a defendant "may" plead guilty. Because of the similarity between the federal and state rules, we look to federal precedent for assistance in interpreting our rule. *See, e.g., Brown v. State,* 2019 WY 42, ¶ 13, 439 P.3d 726, 731 (Wyo. 2019) (discussing federal cases interpreting F.R.Cr.P. 11 because W.R.Cr.P. 11 is similar) (other citation and quotation marks omitted); *Dobbins v. State,* 2012 WY 110, ¶ 45, 298 P.3d 807, 820 (Wyo. 2012) ("since W.R.Cr.P. 11 is derived from its federal counterpart, we give weight to relevant federal procedure"). Despite F.R.Cr.P. 11(a)'s use of the permissive verb "may," federal courts have persisted in ruling a criminal defendant does not have an absolute right to plead guilty. *Frye,* 566 U.S. at 148-49, 132 S.Ct. at 1410; *North Carolina v. Alford,* 400 U.S. 25, 38 n.11, 91 S.Ct. 160, 168 n.1, 27 L.Ed.2d 162 (1970); *Moran,* 452 F.3d at 1171.

5

[¶17] As Mr. Miller correctly points out, compliance with Rule 11 is required to protect a defendant's due process interests when he changes his plea to guilty. *Hoggatt v. State,* 606 P.2d 718, 722 (Wyo. 1980) ("Failure on the part of the court to [follow W.R.Cr.P. 11], deprives the defendant of his constitutional right of due process.") (citation omitted). However, any variance by the district court from the procedures required by the rule that does not affect the defendant's "substantial rights shall be disregarded." W.R.Cr.P. 11(h). *See also, Dobbins,* ¶ 47, 298 P.3d at 820 (disregarding the district court's variance from Rule 11 requirements because it did not affect Dobbins' substantial rights).

[¶18] Mr. Miller complains the district court violated his due process rights by failing to ascertain whether his guilty plea was voluntary under W.R.Cr.P. 11(d) or inquire on the record into the voluntariness or accuracy of his plea in accordance with W.R.Cr.P. 11(g). Rule 11(d) states: "The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement." Under the plain language of Rule 11(d), it is necessary for the district court to determine whether a guilty plea is voluntary only when it <u>accepts</u> the plea. *See Maes v. State,* 2005 WY 70, ¶¶ 8-9, 114 P.3d 708, 710 (Wyo. 2005) (addressing Rule 11(d)'s requirements in reviewing a district court's acceptance of the defendant's guilty plea) (citing *Van Haele v. State,* 2004 WY 59, ¶ 12, 90 P.3d 708, 711-12 (Wyo. 2004)). Similarly, Rule 11(g) requires the district court to include in the record its "inquiry" into the voluntariness and accuracy of the plea only when the defendant <u>enters</u> a guilty plea. Here, the district court did not allow Mr. Miller to change his plea to guilty, so there was no need (nor would it make sense) for it to ascertain whether his decision to plead guilty was voluntary or accurate.

[¶19] Mr. Miller asserts the district court violated his right to due process by failing to follow Rule 11(e)(4) – (5)'s requirements for plea agreements:

> (e) *Plea Agreement Procedure.* –
>
> . . . .
>
> (4) Rejection of Agreement. – If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, *in camera*, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw the plea, and advise the defendant that if the defendant persists in a guilty plea or plea of nolo contendere the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

(5) *Notification to Court.* – Except for good cause shown, notification to the court of the existence of a plea agreement shall be given at the arraignment or at such other time, prior to trial, as may be fixed by the court.

[¶20] Although Mr. Miller stated at the change of plea hearing there was no plea agreement between him and the State, he maintains on appeal there was an "implied" plea agreement by stating "there was no plea agreement, and the district court rejected that plea agreement." It strains the imagination to understand how the district court could have rejected a plea agreement that did not exist. Mr. Miller offers no authority to support this illogical argument. If we were to accept his contention, every guilty plea would involve a plea agreement. There is nothing in the rule to suggest that is true. Further, it would be nonsensical for the district court to advise the defendant it was not bound by a plea agreement and "the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement" when no such agreement exists. W.R.Cr.P. 11(e)(4). Mr. Miller has failed to establish W.R.Cr.P. 11 provided him a due process right to change his plea to guilty or that the district court violated due process by failing to follow the rule's requirements.

### 2. *Abuse of Discretion*

[¶21] We review the district court's refusal to accept Mr. Miller's guilty plea for an abuse of discretion. *See United States v. Buonocore,* 416 F.3d 1124, 1129 (10th Cir. 2005) (courts have discretion to refuse to accept a guilty plea); *United States v. Michel-Galaviz,* 415 F.3d 946, 948 (8th Cir. 2005) (same). *See also, United States v. Padilla,* 889 F.3d 917, 919 (8th Cir. 2018) (per curiam) (the district court did not abuse its discretion by refusing to allow the defendant to plead guilty to two of the three charges against him). A court abuses its discretion when it "could not have reasonably concluded as it did." *Langley v. State,* 2020 WY 135, ¶ 18, 474 P.3d 1130, 1135 (Wyo. 2020) (citations and quotation marks omitted). *See also, Requejo v. State,* 2019 WY 44, ¶ 7, 439 P.3d 747, 749 (Wyo. 2019) ("We will find an abuse of discretion only if the trial court could not reasonably conclude as it did, and we will not reverse its decision if there is a legitimate basis for its ruling. The party challenging the trial court's decision has the burden of showing an abuse of discretion.") (citation omitted).

[¶22] The record in this case does not establish an abuse of discretion. In refusing to allow Mr. Miller to change his plea to guilty on the domestic battery counts, the district court expressed concern that a guilty plea to less than all the charges would create significant legal and logistical issues for the trial on the remaining strangulation count. Specifically, once the two domestic battery counts were no longer trial issues, the State would seek to introduce evidence of them during the trial on the strangulation count. *See* W.R.E. 404(b). Once the State gave notice of its intent to introduce W.R.E. 404(b) evidence, a pretrial hearing would be necessary to determine the admissibility of the evidence. *See Gleason v.*

*State,* 2002 WY 161, ¶ 18 n.2, 57 P.3d 332, 340 n.2 (Wyo. 2002) (expressing "firm preference" for pretrial determination of Rule 404(b) issues). *See also, Volpi v. State,* 2018 WY 66, ¶ 17, 419 P.3d 884, 890 (Wyo. 2018) ("[r]ulings on uncharged misconduct evidence are too important to be made in the heat and pressure of a trial") (citations and quotation marks omitted). The district court indicated it would not be able to schedule a Rule 404(b) hearing in the two weeks left before trial. The court also noted Mr. Miller's case was first on the trial stack in the court's very crowded docket and, if it continued the trial, the court would have to reorganize the stack. These were reasonable bases for denying Mr. Miller's change of plea request. *See generally, Padilla,* 889 F.3d at 919 (indicating the trial court did not abuse its discretion by refusing to allow the defendant to plead guilty to two of three charges).

[¶23] Furthermore, even if the district court abused its discretion by denying Mr. Miller's change of plea request, he is still required to show the error was prejudicial. *See Craft v. State,* 2013 WY 41, ¶ 14, 298 P.3d 825, 830 (Wyo. 2013). Error is prejudicial when "'there is a reasonable probability that the result would have been more favorable to the defendant had the error not occurred.'" *Cox v. State,* 2020 WY 147, ¶ 16, 477 P.3d 82, 85 (Wyo. 2020) (quoting *Larkins v. State*, 2018 WY 122, ¶ 94, 429 P.3d 28, 49-50 (Wyo. 2018)).

[¶24] Mr. Miller does not explain how he was prejudiced by the district court's ruling. His purpose in pleading guilty to the misdemeanor battery counts was to "get [them] off the table" in the strangulation trial. Mr. Miller's argument necessarily presumes the evidence of the domestic batteries would not have been admitted at trial or would have been limited under W.R.E. 404(b). However, he makes no effort to establish the evidence was inadmissible under the rule or our precedent. Moreover, if the district court had accepted his pleas, he would have been adjudged guilty of two domestic batteries, whereas he was ultimately convicted only for the stabbing because the State voluntarily dismissed the slapping count.

[¶25] Mr. Miller also has not shown there is a reasonable probability the result of the strangulation trial would have been more favorable to him had the domestic battery evidence been excluded. There was ample independent evidence to support the strangulation conviction without the domestic battery evidence. To prove strangulation, the State was required to show Mr. Miller "intentionally and knowingly or recklessly cause[d] or attempt[ed] to cause bodily injury to a household member [Ms. Martinez] by impeding the normal breathing or circulation of blood by [a]pplying pressure on the throat or neck[.]" Wyo. Stat. Ann. § 6-2-509(a)(i) (LexisNexis 2021). Ms. Martinez testified Mr. Miller wrapped his hand completely around her throat and squeezed, interfering with her breathing and making her dizzy. Three law enforcement officers testified to observing bruising or discoloration on her neck, and photographs of the area were admitted into evidence at the trial. Mr. Miller was not prejudiced by the district court's refusal to allow him to enter his guilty pleas.

## CONCLUSION

[¶26] Mr. Miller has not established he had a due process right to plead guilty, and the district court did not abuse its discretion when it denied his request to change his pleas.

[¶27] Affirmed.